1  **THE WESTON FIRM**
2  GREGORY S. WESTON (239944)
   JACK FITZGERALD (257370)
3  888 Turquoise Street
4  San Diego, CA 92109
   Telephone:  858 488 1672
5  Facsimile:   480 247 4553
6  greg@westonfirm.com
   jack@westonfirm.com
7
8  **BECK & LEE BUSINESS TRIAL LAWYERS**
   JARED H. BECK (233743)
9  ELIZABETH LEE BECK (233742)
10 Courthouse Plaza Building
   28 West Flagler Street, Suite 555
11 Miami, FL 33130
   Phone: 305 789 0072
12 Fax: 786 664 3334
13 jared@beckandlee.com
   elizabeth@beckandlee.com
14

15 Counsel for Plaintiff and the Proposed Classes

16         **UNITED STATES DISTRICT COURT**

17         **CENTRAL DISTRICT OF CALIFORNIA**

18

19 | MARY HENDERSON, on behalf of | Case No **CV10 4524** GHK VBKx
20 | herself and all others similarly | Pleading Type: Class Action
21 | situated,
22 |          Plaintiffs, | **COMPLAINT FOR VIOLATIONS OF**
23 |     v. | **THE LANHAM ACT,**
            | **UNFAIR COMPETITION LAW,**
24 |       | **FALSE ADVERTISING LAW, AND**
25 | THE J.M. SMUCKER | **CONSUMER LEGAL**
26 | COMPANY, | **REMEDIES ACT**
27 |          Defendant. |
28 |       | **DEMAND FOR JURY TRIAL**

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW,
CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

Plaintiff Mary Henderson, on behalf of herself, all others similarly situated, and the general public, by and through undersigned counsel, hereby sues Defendant The J.M. Smucker Co. ("Smucker") and, upon information and belief and investigation of counsel, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action under 28 U.S.C. §1331 and 15 U.S.C. §1121.

2.      This Court also has original jurisdiction under 28 U.S.C. §1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff resides in and suffered injuries as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products in this District; (2) resides in this District; and (3) is subject to personal jurisdiction in this District.

## INTRODUCTION

4.      Plaintiff Mary Henderson repeatedly purchased Crisco Original Shortening, Crisco Butter Flavor Shortening, and Uncrustables Sandwiches (collectively, the "Smucker Trans Fat Products") made by Smucker in California throughout the Class Period defined herein.

5.      All of the the Smucker Trans Fat Products contain dangerous levels of

1

artificial *trans* fat, a toxic food additive banned in many parts of the world.

6.    Smucker uses various methods to falsely represent the Smucker Trans Fat Products as healthful and not harmful to the cardiovascular system.

7.    Artificial *trans* fat raises the risk of coronary heart disease more than any known nutritive product.

8.    Artificial *trans* fat causes heart disease by raising the level of "bad" LDL cholesterol and lowering the level of "good" HDL cholesterol.

9.    Artificial *trans* fat also causes cancer and type-2 diabetes.

10.    Plaintiff seeks an order that compels Smucker to (1) cease marketing and selling the Smucker Trans Fat Products using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Smucker was unjustly enriched, (4) destroy all misleading and deceptive materials and products, and (5) award Plaintiff and other Class members actual damages, restitution, punitive damages, costs, expenses, and reasonable attorneys' fees.

## **PARTIES**

11.    Defendant The J.M. Smucker Company is an Ohio corporation with its principal place of business in Ohio. Smucker produces and manufactures Crisco Original Shortening, Crisco Butter Flavor Shortening, and Smucker's Uncrustables Sandwiches.

12.    Smucker maintains extensive operations in California, including canning and food manufacturing facilities in Salinas, Watsonville, Oxnard, and Chico.

13.    Plaintiff Mary Henderson is a resident of California who repeatedly purchased the Smucker Trans Fat Products in various California stores during each year of the Class Period defined herein.

14.    Specifically, Mrs. Henderson purchased Crisco Original Shortening

and Crisco Butter Flavor Shortening approximately four times each year of the Class Period. She used them for frying foods and baking brownies, cookies, pies, and lemon bars for herself and her children, whose health she has great concern for.

15.     Mrs. Henderson purchased Smucker's Uncrustables Sandwiches on approximately three times in 2009 and at two times in 2010, again for her own and her family's consumption.

16.     Between 2000 and 2005, Mrs. Henderson purchased Crisco at Albertsons, 9775 Baseline Road, Rancho Cucamonga, California 91730; Stater Bros., 8770 Baseline Road, Alta Loma, California 91701; and Vons, 7243 Haven Avenue, Rancho Cucamonga, California 91701.

17.     After she moved between 2005 and 2010, Mrs. Henderson purchased Crisco from Albertsons, 3180 North Garey Avenue, Pomona, California 91767; Stater Bros., 1055 West Foothill Boulevard, Claremont, California 91711; and Vons, 550 East Baseline Road, Claremont, California 91711. Mrs. Henderson's Uncrustables purchased in 2009 and 2010 were from the same stores she purchased Crisco.

18.     Plaintiff first discovered Smucker's unlawful acts described herein in May 2010, when she learned that the Smucker Trans Fat Products contained artificial *trans* fat, and cause heart disease, diabetes, cancer, and death.

19.     Mrs. Henderson, in the exercise of reasonable diligence, could not have discovered earlier Smucker's unlawful acts described herein because the dangers of artificial *trans* fats were known to Smucker, but not to her, throughout the Class Period defined herein. She is not a nutritionist, food expert, or food scientist, but rather a small business owner and lay consumer who did not have the specialized knowledge that Smucker had, which otherwise would have enabled her to associate partially hydrogenated oil with artificial *trans* fat, and artificial *trans* fat with disease. Even today the nature and extensive utilization of artificial *trans*

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

fats—including that they necessarily exist where partially hydrogenated oil is used as an ingredient in a food product—is generally unknown to the average consumer.

20.    Mrs. Henderson relied, during the Class Period, on Smucker's misleading "Saturated Fat Comparison" to butter, and "50% Less Saturated Fat Than Butter," "USE INSTEAD OF BUTTER OR MARGARINE FOR BAKING," and "All Vegetable" claims when she purchased Crisco, and "Wholesome," "whole wheat," and "homemade goodness of PB&J" claims, implying Uncrustables were healthy, when purchasing that product.

## SUMMARY OF THE STRONG EVIDENCE OF HEALTH DANGERS OF ARTIFICIAL *TRANS* FAT

**Artificial *trans* fat is a manufactured food product whose basic chemical structure is different from natural fat molecules.**

21.    *Trans* fat is naturally found in trace amounts in foods derived from ruminant animals, primarily in cow's milk and red meat.[1] It is also found in small quantities in human breast milk.

22.    Also known as vaccenic acid, natural *trans* fat has never been linked to any negative health effect in human beings and is chemically different than artificial *trans* fat. because it has been in the human diet for millennia, the human body is well-adapted to digest it.

23.    Initial studies on rats indicate that consumption of vaccenic acid is beneficial to health.[2]

24.    Artificial *trans* fat, by contrast, is manufactured in an industrial

---

[1] Dariush Mozaffarian *et al., Trans Fatty Acids and Cardiovascular Disease*, 354 New Eng. J. Med. 1601, 1608 (2008).

[2] Ye Wang *et al., Trans-11 Vaccenic Acid Dietary Supplementation Induces Hypolipidemic Effects on JCR:LA-cp Rats*, 138 J. Nutrition 2117 (November 2008).

process called hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400 degrees Fahrenheit in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[3]

25.    The resulting product is known as partially hydrogenated vegetable oil ("PHVO"), which was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann.

26.    PHVO is the main source of *trans* fat in the American diet and an ingredient in the Smucker Trans Fat Products.[4]

27.    *Trans* fat molecules chemically differ from the natural fat molecules in other food products. Natural fat, except the trace amounts of natural *trans* fat from animal sources, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen atoms on the same side of the carbon chain ("cis fat"). *Trans* fat, however, has double bonds on opposite sides of its carbon chain.



----

[3] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 Circulation 2588, 2588-90 (1997).
[4] *See* Mozaffarian, 354 New Eng. J. Med. at 1608.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20        26.    PHVO was initially a "wonder product" attractive to the packaged

21 food industry because it combines the low cost of unsaturated cis fat with the

22 flexibility and long shelf life of saturated fat.

23        27.    Like cis fat, PHVO is manufactured from lower-cost legumes,[5] while

24 saturated fat is derived from relatively expensive animal and tropical plant

25 sources.[6] Like natural saturated fat, PHVO has a long shelf life, physical solidity,

26

27              [5] e.g., corn oil, soybean oil, peanut oil
28              [6] e.g., butter, cream, tallow, coconut oil

6

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW,
CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

1  and flavor stability. The industrial process that adds hydrogen ions to normal

2  vegetable oil improves food texture and permits food products to withstand heavy

3  mechanical processing and high temperatures.[7] Given its versatility, PHVO was

4  recently used in 40 percent of processed packaged foods.[8]

5      28.  Artificial *trans* fat does not exist in nature, and the human body has

6  not evolved to digest it. The same unusual and unnatural chemical structure that

7  gives artificial *trans* fat properties attractive from an industrial perspective makes it

8  highly toxic to human health.

9  **Artificial *trans* fat causes cardiovascular disease, type 2 diabetes, and cancer.**

10  • **Heart Disease**

11      29.  In a joint Dietary Guidelines Advisory Committee Report, the U.S.

12  Department of Health and Human Services and the U.S. Department of Agriculture

13  recognized **"[t]he relationship between *trans* fatty acid intake and LDL**

14  **cholesterol is direct and progressive, increasing the risk of cardiovascular**

15  **disease."**[9]

16      30.  Food products with *trans* fat harm the heart by "rais[ing] the

17  concentration of the most dangerous form of serum cholesterol (LDL cholesterol)"

18  and "lower[ing] a protective form of serum cholesterol (HDL cholesterol)."[10]

19      31.  The American Heart Association notes that **"*trans* fats raise your**

20

21      [7] *See* Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*,
340 New Eng. J. Med. 94, 94-8 (1999). *See also* Ctr. for Food Safety & Applied

22  Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat

23  Nutrition Labeling (Update 2006) (2003), *available at*
http://www.cfsan.fda.gov/%7Edms/qatrans2.html#fn.

24      [8] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66.

25  *See also* Kim Severson, *Hidden Killer. It's **Trans** Fat. It's Dangerous. And It's In
Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

26      [9] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary

27  Guidelines Advisory Committee Report, Section 10 (2005).

28      [10] *Id.*

**bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating *trans* fats increases your risk of developing heart disease."[11]**

32.    After an extensive evaluation of the scientific literature on the *trans* fat/CHD connection, the FDA concluded:

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between *trans* fat intake and CHD risk is strong.[12]

33.    *Trans* fat raises the risk of CHD more than any other known nutritive product.[13]

34.    Removing merely two percent of daily calories from *trans* fat from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,0000 premature deaths annually."[14]

35.    A study on the impact of *trans* fatty acids on heart health provides evidence that:

> [E]ven the lower estimates from the effects [of PHVO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease

---

[11] Am. Heart Ass'n., *Trans Fat Overview*, *available at* http://www.americanheart.org/presenter.jhtml?identifier=3045792.

[12] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling.

[13] Mozaffarian, 354 New Eng. J. Med. at 1603.

[14] Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999).

1   will be even larger.[15]

2   36.   Since "the adverse effect of *trans* fatty acids is stronger than that of

3   saturated fatty acids," saturated fat consumption would need to be reduced by ten

4   percent of caloric intake to have the same impact as a two percent reduction of

5   artificial *trans* fat intake.[16]

6   37.   "10 to 19 percent of CHD events in the United States could be averted

7   by reducing the intake of *trans* fat."[17]

8   38.   By raising LDL levels and lowering HDL levels, *trans* fat causes a

9   wide variety of dangerous heart conditions, including low flow-mediated

10  vasodilation ("FMD"), coronary artery disease, and primary cardiac arrest.

11  39.   After conducting a crossover diet trial, Danish researchers determined

12  that healthy men and women who maintained a high-*trans* fat diet had 21 percent

13  lower protective HDL levels and 29 percent lower flow-mediated vasodilation than

14  those on a high-saturated fat diet. Since FMD measures the percent increase

15  between the diameter of the artery at ordinary and at maximum dilation, low FMD

16  is "a risk marker of coronary heart disease."[18]

17  40.   Australian researchers observed that heart attack patients possess

18  elevated amounts of *trans* fat in their adipose tissue, strongly linking long-term

19  consumption of artificial *trans* fat with heart disease.[19]

20  41.   By taking blood samples from 179 survivors of cardiac arrest and 285

21

22  [15] W.C. Willett *et al., Trans Fatty Acids: Are the Effects only Marginal?* 84
    Am. J. Pub. Health 722, 723 (1994).

23  [16] Mozaffarian, 354 New Eng. J. Med. at 1609.

    [17] *See* Mozaffarian, 354 New Eng. J. Med. at 1611.

24  [18] Nicole M. De Roos *et al., Replacement of Dietary Saturated Fatty Acids

25  by Trans Fatty Acids Lowers Serum HDL Cholesterol and Impairs Endothelial
    Function in Healthy Men and Women*, 21 Am. Heart Assoc. 1233, 1233-37 (2001).

26  [19] Peter M. Clifton *et al., Trans Fatty Acids In Adipose Tissue And The Food

27  Supply Are Associated With Myocardial Infarction.* 134 J. of Nutrition 874, 874-79
    (2004).

28

randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by *trans* fat intake, a study published in the American Heart Association's *Circulation* found the largest consumers of *trans* fat have three times the risk of suffering primary cardiac arrest, even after controlling for a variety of medical and lifestyle risk factors.[20]

- **Diabetes**

42.    Artificial *trans* fat causes type 2 diabetes.[21]

43.    A 14-year study of 84,204 women found that for every 2percent increase in energy intake from *trans* fat, the relative risk of type 2 diabetes was 1.39. In other words, each 2percent of calories from artificial *trans* fat increases the risk of type 2 diabetes by 39percent.[22]

- **Cancer**

44.    *Trans* fat is a known carcinogen shown to cause breast, prostate, and colorectal cancer.

45.    A 13-year study of 19,934 French women showed 75percent more women contracted breast cancer in the highest quintile of *trans* fat consumption than did those in the lowest.[23]

46.    In a 25-year study of 14,916 U.S. physicians, the doctors in the highest quintile of *trans* fat intake had over a 100percent greater risk of developing

---

[20] Rozenn N. Lemaitre *et al.*, *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 Circulation 697, 697-701 (2002).

[21] Am. Heart Ass'n., *Trans Fat Overview*.

[22] Jorge Salmeron *et al.*, *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 Am. J. of Clinical Nutrition 1019, 1023 (2001).

[23] Véronique Chajès *et al.*, *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. of Epidemiology 1312, 1316 (2008).

prostate cancer than those in the lowest quintile.[24]

47.   A study of 1,012 American males observing *trans* fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total *trans*-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58 percent more likely to contract prostate cancer than those in the lowest.[25]

48.   A 600-person study found an 86 percent greater risk of colorectal cancer in the highest *trans* fat consumption quartile than in the lowest.[26]

49.   A 2,910-person study found "*trans*-monounsaturated fatty acids…were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[27]

50.   The serious health conditions caused by *trans* fat consumption only occur from artificial *trans* fat, not the trace natural *trans* fat found in ruminant sources:

> Of four prospective studies evaluating the relation between the intake of *trans* fatty acids from ruminants and the risk of CHD, none identified a significant positive association, whereas three identified nonsignificant trends toward an inverse association. . . . [T]he sum of the current evidence suggests that the public health implications of

---

[24] Jorge Chavarro *et al.*, *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. of Cancer Research 95, 99 (2006).

[25] Xin Liu *et al.*, *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232 (2007).

[26] L.C. Vinikoor *et al.*, *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).

[27] Evropi Theodoratou *et al.*, *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 Am. J. of Epidemiology 181 (2007).

consuming *trans* fats from ruminant products are relatively limited.[28]

**The grave, concrete risks of artificial *trans* fat consumption far outweigh any conceivable benefits of Smucker's conduct.**

51.     There is no health benefit to artificial *trans* fat consumption and "no safe level" of *trans* fat intake.[29]

52.     According to the established consensus of the scientific community, consumers should keep their consumption of *trans* fat "as low as possible."[30]

53.     As Dr. Dariush Mozaffarian notes in the New England Journal of Medicine:

> [F]rom a nutritional standpoint, the consumption of *trans* fatty acids results in considerable potential harm but no apparent benefit. . . . Thus, complete or near-complete avoidance of industrially produced *trans* fat—a consumption of less than 0.5 percent of the total energy intake—may be necessary to avoid adverse effects and would be prudent to minimize health risks.[31]

**Artificial *trans* fat is so inherently dangerous that it is being banned in an increasing number of American states and European countries.**

54.     In 2008, California became the first state to ban all restaurant food with artificial *trans* fat, a law affecting approximately 88,000 eating establishments. *Trans* fats are now banned in restaurants as of January 1, 2010.

55.     New York City banned all *trans* fat in its 20,000 food establishments in 2006. Similar laws exist in Philadelphia; Baltimore; Stamford, Connecticut; and

---

[28] Mozaffarian, 354 New Eng. J. Med. at 1608-1609.

[29] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (2005).

[30] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids 424 (2005).

[31] Mozaffarian, 354 New Eng. J. Med. at 1609.

1   Montgomery County, Maryland.

2       56.   A 2004 Danish law restricted all foods to under 2percent of calories

3   from *trans* fat, a threshold neither Crisco Original Shortening nor Crisco Butter

4   Flavor Shortening meet. Switzerland made the same restriction in 2008.[32]

5       57.   After conducting a surveillance study of Denmark's *trans* fat ban,

6   researchers concluded the change "did not appreciably affect the quality, cost or

7   availability of food" and did not have "any noticeable effect for the consumers."[33]

8       58.   In 2006, a *trans* fat task force co-chaired by Health Canada and the

9   Heart and Stroke Foundation of Canada recommended capping *trans* fat content at

10  two percent of calories for tub margarines and spreads and five percent for all other

11  foods. On September 30, 2009, British Columbia became the first province to

12  impose these rules on all restaurants, schools, hospitals, and special events.[34]

13  **Direct consumption of dietary cholesterol is unrelated to heart disease.**

14      59.   By raising bad cholesterol and lowering good cholesterol levels, *trans*

15  fat raises the risk of CHD more than any other known nutritive product.[35] By

16  contrast, dietary cholesterol intake is unrelated to CHD risk.[36]

17

18      [32]  Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The

19  Independent (UK), June 10, 2008.

        [33]  Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* High Levels of

20  Industrially Produced Trans Fat in Popular Fast Food, 354 New Eng. J. Med. 1650,

21  1652 (2006).

        [34]  *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of

22  Healthy Living and Sport Press Release (2009), *available at*

23       http://www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-

    000315.htm.

24      [35]  Mozaffarian, 354 New Eng. J. Med. at 1602.

25      [36]  Katja L. Esrey *et al.*, *Relationship Between Dietary Intake and Coronary

    Heart Disease Mortality: Lipid Research Clinics Prevalence Follow-up Study,* 49

26  J. Clin. Epidemiol 2:211, 212-216 (1996). *See also* Barbara Millen Posner *et al.*,

27  *Dietary Lipid Predictors of Coronary Heart Disease in Men: The Framingham

    Study,* 151 Arch Intern Med 1181, 1184-86 (June 1991).

28

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW,
CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

1

## <u>SPECIFIC MISREPRESENTATIONS, MATERIAL</u>
## <u>OMISSIONS, AND DECEPTIVE ACTS</u>

2

3    **<u>Crisco Original Shortening</u>**

4





14

60.     **Deceptive and misleading comparison to butter:** The label of Crisco Original Shortening states "50% Less Saturated Fat Than Butter" and "USE INSTEAD OF BUTTER OR MARGARINE FOR BAKING" to imply that Crisco Shortening is more healthful alternative to butter. But Crisco Original Shortening contains dangerous levels of artificial *trans* fat, whereas butter contains ***no*** artificial *trans* fat.

61.     **False and misleading "All-Vegetable" claim:** As described above vegetables are natural products. The label of Crisco Original Shortening states the product is "all-vegetable." While the ingredients in Crisco did in fact originate as oil derived from highly processed palm and soybean, the process of hydrogenation as described above renders them artificial non-vegetable products, including a large amount of artificial trans fat, which is a chemical that does not exist in vegetables, or indeed anywhere until the era of industrial food processing.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

1 **<u>Crisco Butter Flavor Shortening</u>**



COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

62. **Deceptive and misleading comparison to butter:** The label of Smucker's Crisco Butter Flavor Shortening states "50% Less Saturated Fat Than Butter" and to "USE INSTEAD OF BUTTER OR MARGARINE FOR BAKING" to imply that Crisco Butter Flavor Shortening is a more healthful alternative to butter. But Crisco Butter Flavor Shortening contains dangerous levels of artificial *trans* fat, whereas butter contains **no** artificial *trans* fat. Crisco Butter Flavor Shortening also contains a misleading "Saturated Fat Comparison" chart comparing the saturated fat in butter to the saturated fat content of Crisco Butter Flavor Shortening to reinforce the deceptive claims made on the front of the label.

63. **False and misleading "All-Vegetable" claim:** As described above vegetables are natural products. The label of Crisco Butter Flavor Shortening states the product is "all-vegetable." While the ingredients in Crisco Butter Flavor Shortening did in fact originate as oil derived from highly processed palm and soybean, the process of hydrogenation as described above renders them artificial non-vegetable products, including a large amount of artificial trans fat, which is a chemical that does not exist in vegetables, or indeed anywhere until the era of industrial food processing

//
//
//
//
//
//
//
//
//
//
//

17

**Uncrustables Sandwiches**



64.     **Misleading "Whole Grain," "Wholesome," and "Whole Wheat bread" Claims:** Smucker labels its Uncrustables Sandwiches "wholesome," highlights their purported "Whole Grain" content, titles them "Whole Wheat," and includes an image of whole wheat grains.

65.     The implication of Smucker's label is clear: by playing on the common consumer perception that "whole wheat" products generally extend health benefits not associated with products lacking whole wheat, Smucker deceptively induces consumers to purchase Uncrustables containing significant levels of artificial *trans* fat which, far from "wholesome" or offering the traditional benefits of "whole grain" products like "whole wheat bread," causes type-2 diabetes, coronary heart disease, and cancer.

66.     False and misleading homemade "goodness of PB&J" claim: Smucker's conduct is especially egregious because a peanut butter & jelly sandwich, an American child's dietary staple, contains no *trans* fat and does not pose the serious health consequences to children associated with Uncrustables. Smucker claims its product has "the homemade goodness of PB&J." However, neither bread, nor peanut butter, nor jelly contain artificial *trans* fat, which renders Uncrustables dangerous for children's health.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this action on behalf of herself and all others similarly situated on behalf of the following classes:

**Damages Class**
All persons (excluding officers, directors, and employees of Smucker) who purchased Smucker Trans Fat products on or after January 1, 2000 in the United States for their own use rather than resale or distribution.

**Unfair Competition Law Class**
All persons (excluding officers, directors, and employees of Smucker)

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

who purchased, on or after June 18, 2006, one or more Smucker Trans Fat Products in the United States for their own use rather than resale or distribution.

**Injunctive Relief Class**

All persons (excluding officers, directors, and employees of Smucker) who commonly purchase or are in the market for one or more Smucker Trans Fat Products in the United States for their own use rather than resale or distribution.

68.   Questions of law and fact common to Plaintiff and the Classes include:

      a.   Whether Smucker contributed to, committed, and/or is responsible for the conduct alleged herein;

      b.   Whether Smucker's conduct constitutes violations of the Lanham Act;

      c.   Whether Smucker's conduct constitutes violations of the UCL and FAL;

      d.   Whether Smucker's conduct constitutes violations of the CLRA;

      e.   Whether Smucker acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

      f.   Whether Class members are entitled to compensatory, injunctive, and other equitable relief.

69.   By purchasing and/or using the Smucker Trans Fat Products, all Class members were subjected to the same wrongful conduct.

70.   Absent Smucker's material deceptions, misstatements, and omissions, Plaintiff and other Class members would not have purchased the Smucker Trans Fat Products.

71.   Plaintiff's claims are typical of the Classes' claims. Plaintiff will fairly and adequately protect the interests of the Classes, has no interests that are

incompatible with the interests of the Classes, and has retained counsel competent and experienced in class litigation.

72.   The Classes are sufficiently numerous, as they each include hundreds of thousands of individuals who purchased the Smucker Trans Fat Products throughout the United States.

73.   Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

74.   Smucker has acted on grounds applicable to the Classes, thereby making appropriate final injunctive relief or declaratory relief concerning the Classes as a whole.

75.   Questions of law and fact common to the Classes predominate over any questions affecting only individual members.

76.   Class treatment is appropriate under FRCP 23(a) and both FRCP 23(b)(2) and 23(b)(3). Plaintiff does not contemplate class notice if the class is certified under FRCP 23(b)(2), which does not require notice, and notice via publication if the class is certified under FRCP 23(b)(3) or if the Court determines class notice is required notwithstanding that notice is not required under FRCP 23(b)(2). Plaintiff will, if notice is required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice plan.

**TOLLING ALLEGATIONS**

77.   Plaintiff did not discover that Smucker's labeling of the Smucker Trans Fat Products was false, deceptive, or misleading until late May 2010, when she was provided with information from several of the studies cited above, demonstrating that foods high in *trans* fat—such as the Smucker Trans Fat

21

1  Products—are harmful to human health because of their role in causing coronary

2  heart disease, type-2 diabetes, and cancer. Until this time, she lacked knowledge

3  regarding the facts of her claims against Smucker.

4      78.   Mrs. Henderson is a reasonably diligent consumer who exercised

5  reasonable diligence in her purchasing, use, and consumption of the Smucker

6  Trans Fat Products. Nevertheless, she would not have been able to discover

7  Smucker's deceptive practices and lacked the means to discover them given that,

8  like nearly all consumers, she is not an expert on nutrition and does not typically

9  read or have access to scholarly journals such as The Journal of Nutrition,[37] The

10  European Journal of Clinical Nutrition,[38] and The New England Journal of

11  Medicine, [39]  where the scientific evidence of artificial *trans* fat's dangers has been

12  published. Furthermore, Smucker's labeling practices—in particular, representing

13  Crisco Original Shortening and Crisco Butter Flavor Shortening as "50% Less

14  Saturated Fat Than Butter" and that purchasers should "Use Instead of Butter or

15  Margarine For Baking"—actively impeded Plaintiff's and the Classes' abilities to

16  discover the dangerous effects of the Smucker Trans Fat Products throughout the

17  Class Period.

18

19

20

21  _____

22  [37] Peter M. Clifton *et al.*, *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. of Nutrition 874, 874-79

23  (2004).

24  [38] A. Tavani *et al.* *Margarine intake and risk of nonfatal acute myocardial infarction in Italian women*. Eur. J. Clin. Nutr. 51: 30–32 (1997) (estimating a

25  50percent greater risk of heart attack in women with high consumption of

26  margarine, an association "independent of body mass index, history of hypertension and hyperlipidemia.")

27  [39] "10 to 19 percent of CHD events in the United States could be averted by

28  reducing the intake of trans fat." 354 New Eng. J. Med. at 1611.

# FIRST CAUSE OF ACTION

## False Advertising under the Lanham Act, 15 U.S.C. §§ 1125 *et seq.*

79.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

80.     Smucker has made and distributed, in interstate commerce and in this District, products that make false or misleading statements of fact regarding their content. The Smucker Trans Fat Products were placed into interstate commerce by Smucker and sold throughout the country and this District.

81.     The Smucker Trans Fat Products contain on their labels actual misstatements and/or misleading statements and failures to disclose, including, among others, the statement that the product contains "50% Less Saturated Fat Than Butter," that purchasers should "USE INSTEAD OF BUTTER OR MARGARINE FOR BAKING," that the product is "All Vegetable," that the product has the "homemade goodness of PB&J," and that the products are "wholesome," or contain "Whole Grain" or " Whole Wheat."

82.     These false and/or misleading statements and omissions actually deceive, or have a tendency to deceive, any reasonable consumer. This deception is material because it is likely to influence a reasonable consumer's purchasing decision.

83.     Plaintiff seeks an order directing Smucker to destroy all misleading and deceptive advertising materials and products in accordance with 15 U.S.C. § 1118.

84.     Plaintiff further sees an injunction under 15 U.S.C. § 1116 restraining Smucker, its agents, employees, representatives, and all persons acting in concert with Smucker from engaging in further acts of false advertising, and ordering removal of all of Smucker's false advertisements and products possessing misleading statements or omissions of fact.

## SECOND CAUSE OF ACTION

### Violations of the California Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*

85. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

86. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

87. The acts, omissions, misrepresentations, practices, and non-disclosures of Smucker as alleged herein constitute "unlawful" business acts and practices because Smucker's conduct violates the Lanham Act, the False Advertising Law, and the Consumer Legal Remedies Act.

88. The acts, omissions, misrepresentations, practices, and non-disclosures of Smucker as alleged herein constitute "unfair" business acts and practices because Smucker's conduct is immoral, unscrupulous, and offends public policy; and because the gravity of Smucker's conduct outweighs any conceivable benefit of such conduct.

89. The acts, omissions, misrepresentations, practices, and non-disclosures of Smucker as alleged herein constitute "fraudulent" business acts and practices in that Smucker's conduct has a tendency to deceive Plaintiff, the Classes, and the general public.

90. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Smucker from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

91. Plaintiff further seeks an order for the disgorgement and restitution of all monies from the sale of the Smucker Trans Fat Products which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

**THIRD CAUSE OF ACTION**

**Violations of the California False Advertising Law,
Bus. & Prof. Code §§ 17500 *et seq.***

92.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

93.     In violation of Bus. & Prof. Code §§ 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Smucker Trans Fat Products without the knowledge that they contained toxic artificial *trans* fat.

94.     Smucker knew and/or reasonably should have known that the labels on the Smucker Trans Fat Products were untrue and/or misleading.

95.     As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Smucker was unjustly enriched.

**FOURTH CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act,
Civ. Code §§ 1750 *et seq.***

**(Equitable Relief)**

96.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

97.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

98.     Smucker's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised.

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

99.   As a result, Plaintiff and the Classes have suffered irreparable harm and are entitled to injunctive relief and restitution.

100.   In compliance with Civ. Code § 1782, Plaintiff has sent Smucker written notice of her claims.

## **FIFTH CAUSE OF ACTION**

### **Violations of the Consumer Legal Remedies Act,**

### **Civ. Code §§ 1750 *et seq.***

### **(Damages)**

101.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

102.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

103.   Smucker's policies, acts, and practices were designed to, and did, result in the purchase and use of the Smucker Trans Fat Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

b. § 1770(a)(7): representing that goods are of a particular

26

standard, quality, or grade if they are of another.

c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised.

d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

104.   As a result, Plaintiff and the Class have suffered irreparable harm and so seek, and are entitled to, actual damages, punitive damages, injunctive relief and restitution.

105.   The conduct described herein was long-standing, continuing even after Plaintiff demanded the conduct cease in her CLRA letter. Smucker's conduct was undertaken for profit as a deliberate and uniform corporate policy rather than an isolated incident. Smucker's conduct was morally wrong, fraudulent, callous, and oppressive.

106.   In compliance with Civ. Code § 1782, Plaintiff sent written notice to Smucker of her claims more than 30 days before seeking damages.

107.   Smucker received Plaintiff's notice on April 1, 2010 and responded April 28, 2010.

108.   Smucker's response is ineffective to avoid the range of remedies available to Plaintiff and the Classes under the CLRA. Smucker failed to (1) rectify its conduct and (2) offer to compensate Plaintiff and the Classes for out-of-pocket expenses, interest, and damages incurred from the purchase of the Smucker Trans Fat Products—which would not have been purchased but for Smucker's deceptive and misleading conduct.

109.   In accordance with Civ. Code § 1780(a)(2), Plaintiff and the Classes seek, and are entitled to, an award of actual damages, punitive damages, costs, attorneys' fees, and any other relief deemed necessary, appropriate, and proper by the Court pursuant to Civ. Code § 1780.

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment and relief against The J.M. Smucker Company as follows:

A.    Declaring this action to be a proper class action.

B.    An order enjoining Smucker from marketing the Smucker Trans Fat Products as "50% Less Saturated Fat Than Butter" and "wholesome" when they contain partially hydrogenated vegetable oil.

C.    An order enjoining Smucker from marketing Crisco Original Shortening and Crisco Butter Flavor Shortening to be "USE[D] INSTEAD OF BUTTER OR MARGARINE FOR BAKING."

D.    An order enjoining Smucker from marketing Crisco Original Shortening and Crisco Butter Flavor Shortening as "All Vegetable."

E.    An order enjoining Smucker from marketing Uncrustables Sandwiches as "Whole Grain," "Whole Wheat," "wholesome," and as having the "homemade goodness of PB&J."

F.    An order compelling Smucker to conduct a corrective advertising campaign to inform the public that the Smucker Trans Fat Products contain unsafe amounts of artificial *trans* fat at consumers' actual consumption levels.

G.    An order requiring Smucker to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice.

H.    An order compelling Smucker to destroy all misleading and deceptive advertising materials and products as provided by 15 U.S.C. § 1118.

I.    An order requiring Smucker to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the CLRA, plus pre-and post-judgment interest thereon.

J.    Costs, expenses, and reasonable attorneys' fees.

K.    Any other and further relief the Court deems necessary, just, or proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

DATED: June 18, 2010                      Respectfully Submitted,

_____

Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
888 Turquoise Street
San Diego, CA 92109
Telephone: 858 488 1672
Facsimile:   480 247 4553

**BECK & LEE BUSINESS TRIAL LAWYERS**
JARED H. BECK
ELIZABETH LEE BECK
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone: 305 789 0072
Facsimile:   786 664 3334

Counsel for Plaintiff and the
Proposed Classes

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND LANHAM ACT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV10- 4524 GHK (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:

The J.M. Smucker Company
c/o CT Corp System
1300 E. 9th Street
Cleveland, OH 44114

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MARY HENDERSON, on behalf of herself and all
others similarly situated,

PLAINTIFF(S)

v.

The J.M. Smucker Company

DEFENDANT(S).

CASE NUMBER

CV10  4524 GHK VBKx

**SUMMONS**

TO:   DEFENDANT(S): The J.M. Smucker Company

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Gregory S. Weston_____, whose address is _888 Turquoise Street, San Diego, CA 92109_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

JUN 1 8 2010

Dated: _____

By: _____

CHRISTOPHER POWERS

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MARY HENDERSON, on behalf of herself and all others similarly situated

**DEFENDANTS**
THE J.M. SMUCKER COMPANY

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

The Weston Firm, Gregory S. Weston, Jack Fitzgerald, 888 Turquoise Street, San Diego, CA 92109, 8584881672, Beck & Lee Business Trial Lawyers, Jared H. Beck, Elizabeth Lee Beck, 28 W. Flagler St., Miami, FL 33130, 3057890072

Attorneys (If Known)

Ronald Y. Rothstein
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois, 60601

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No ☑ **MONEY DEMANDED IN COMPLAINT: $** to be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. §§1125 et seq. False Advertising under the Lanham Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: _____  CV10 4524

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Ohio |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _G. Wah_          Date 6/18/2010

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |