**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile:   (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

**Counsel for Plaintiff**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARY HENDERSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:10-CV-04524 GHK (VBKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br><span style="color:red">**REDACTED VERSION FOR ELECTRONIC FILING**</span><br><br>Judge: The Hon. George H. King<br>Hearing Date: February 4, 2013<br>Time: 9:30 a.m.<br>Location: Courtroom 650 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iv

INTRODUCTION ...........................................................................................1

FACTS .........................................................................................................1

    I.    THE LAWSUIT & ITS GOALS.................................................1

    II.   SMUCKER MODIFIES THE PRODUCTS' PACKAGING AND
           BEGINS DISCUSSING REFORMULATION IN REACTION TO
           THE LAWSUIT ...................................................................2

    III.  THE PARTIES' SETTLEMENT NEGOTIATIONS .....................2

    IV.  SMUCKER REMOVES TRANS FAT FROM UNCRUSTABLES.............3

    V.   SMUCKER SETTLES MS. HENDERSON'S INDIVIDUAL CLAIM .......4

    VI.  SUMMARY OF MOVANTS' SUCCESSES ................................4

    VII.  THE LAWSUIT SAVED CONSUMERS' LIVES AND MONEY .............5

ARGUMENT ..................................................................................................6

    I.    MOVANTS ARE ENTITLED TO FEES .....................................6

          A.   California Law Applies to this Motion ...............................6

          B.   The CLRA Requires Fees Be Awarded to a "Prevailing
               Plaintiff"....................................................................7

          C.   The Private Attorney General Statute Separately Entitles a
               "Successful Party" to Fees in Public Interest Cases ..........................7

          D.   Movants are "Prevailing" and "Successful" Within the Meaning
               of the CLRA and Private Attorney General Statute ..........................9

i

1. Legal Standard ...................................................................9

2. Movants Are "Prevailing" and "Successful" Because This Lawsuit Was the Catalyst for Changes to Smucker's Conduct ...................................................................10

  a. The Lawsuit Motivated Smucker's Changed Practices...................................................................11

    i. Movants Obtained Much of the Exact Relief They Sought ...................................................................11

    ii. There is a Casual Connection Between This Lawsuit and Smucker's Labeling Changes and Reformulation ...............................................12

  b. The Lawsuit Had Merit ...................................13

  c. There Was a Reasonable Attempt to Settle The Litigation ...................................................................14

3. The Remaining Requirements of Section 1021.5 Are Satisfied ...................................................................15

  a. The Action Resulted in the Enforcement of an Important Right Affecting the Public...........................15

  b. A Significant Benefit Has Been Conferred on the General Public or a Large Class of Persons.................16

  c. The Necessity and Financial Burden of Private Enforcement Makes a Fee Award Appropriate.............16

4. Movants Are "Prevailing" Under the CLRA Because There Was a Net Monetary Recovery .....................................17

II. MOVANTS' REQUESTED FEE OF $3,270,374 IS REASONABLE.......17

 A. The Lodestar/Multiplier Method Determines a Reasonable Fee.......18

ii

B.     Counsel's $1,453,499 Lodestar is Reasonable ..................................19

        1.     Counsels' Rates are Reasonable ...............................................19

        2.     Counsels' Hours Expended are Reasonable ..........................21

C.     A 2.25 Multiplier is Reasonable .......................................................22

        1.     The Exceptional Results Obtained ..........................................23

        2.     Contingency Risk, Preclusion of Other Employment, and Delay..................................................................................................23

        3.     Novelty, Difficulty and Skill ...................................................25

III.    MOVANTS' REQUESTED COSTS OF $35,138.65 ARE REASONABLE...........................................................................................25

APPENDIX 1: SUMMARY COUNSEL'S LODESTAR ................................... I

APPENDIX 2: SUMMARY OF COUNSEL'S EXPENSES...........................II

iii

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abouab v. City and County of San Francisco,*
    141 Cal. App. 4th 643 (2006) ...................................................................10

*Am. Constitutional Party v. Munro,*
    650 F.2d 184 (9th Cir. 1981) ....................................................................10

*Beasley v. Wells Fargo Bank,*
    235 Cal. App. 3d 1407 (1991) ............................................................15, 24

*Bernardi v. County of Monterey,*
    167 Cal. App. 4th 1379 (2008) .................................................................18

*B-K Lighting, Inc. v. Vision3 Lighting,*
    2009 U.S. Dist. LEXIS 111968 (C.D. Cal. Nov. 16, 2009) .......................21

*Blum v. Stenson,*
    465 U.S. 886 (1984)............................................................................19, 20

*Broughton v. Cigna Healthplans,*
    21 Cal. 4th 1066 (1999) .............................................................................7

*Cal. Common Cause v. Duffy,*
    200 Cal. App. 3d 730 (1987) .....................................................................12

*Californians for Responsible Toxics Management v. Kizer,*
    211 Cal. App. 3d 961 (1989) .....................................................................12

*Camancho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008) .....................................................................19

*Chacanaca v. Quaker Oats Co.,*
    2011 U.S. Dist. LEXIS 65023 (N.D. Cal. June 14, 2011)........................25

*Chacanaca v. Quaker Oats Co.,*
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...................................................14

iv

*Champion Produce, Inc. v. Ruby Robinson Co.*,
  342 F.3d 1016 (9th Cir. 2003) ............................................................6

*Charlebois v. Angels Baseball LP*,
  2012 U.S. Dist. LEXIS 91069 (C.D. Cal. May 30, 2012)................................8, 16, 17

*Chin v. Chrysler LLC*,
  538 F.3d 272 (3d Cir. 2008) ............................................................13

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) ............................................................15, 16

*Collado v. Toyota Motor Sales, U.S.A., Inc.*,
  2011 U.S. Dist. LEXIS 133572 (C.D. Cal. Oct. 17, 2011) ........................................20

*Copeland v. Marshall*,
  641 F.2d 880 (D.C. Cir. 1980)............................................................25

*Ctr. for Auto Safety v. Dole*,
  595 F. Supp. 98 (D.D.C. 1984) ............................................................13

*Ctr. for Biological Diversity v. Scarlett*,
  452 F. Supp. 2d 966 (N.D. Cal. 2006)............................................................11

*Envtl. Prot. Info. Ctr. v. Cal. Dep't of Forestry & Fire Prot.*,
  180 Cal. App. 4th 217 (2010) ............................................................18

*Fadhl v. City & County of San Francisco*,
  859 F.2d 649 (9th Cir. 1988) ............................................................24

*Farmers Ins. Exch. v. Sayas*,
  250 F.3d 1234 (9th Cir. 2001) ............................................................6

*Fitzgerald v. City of Los Angeles*,
  2009 U.S. Dist. LEXIS 34803 (C.D. Cal. Apr. 7, 2009) ............................................8

*Flannery v. Cal. Highway Patrol*,
  61 Cal. App. 4th 629 (1998) ............................................................18

*Folsom v. Butte County Ass'n. of Gov'ts*,
  32 Cal. 3d 668 (1982) ............................................................9, 11

v

*Gallucci v. Boiron, Inc.*,
   2012 U.S. Dist. LEXIS 157039 (S.D. Cal. Oct. 31, 2012)....................................20, 21

*Gee v. Temeco, Inc.*,
   615 F.2d 857 (9th Cir. 1980) ........................................................................6

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006) ..........................................................10, 12, 19

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ...........................................................................passim

*Grant v. Martinez*,
   973 F.2d 96 (2d Cir. 1992) .......................................................................21

*Greene v. Dillingham Constr. NA., Inc.*,
   101 Cal. App. 4th 418 (2002) ...................................................................23

*Grodensky v. Artichoke Joe's Casino*,
   171 Cal. App. 4th 1399 (2009) ...................................................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................18

*Hayward v. Ventura Volvo*,
   108 Cal. App. 4th 509 (2003) .................................................................7, 19

*Henderson v. J.M. Smucker Co.*,
   2011 U.S. Dist. LEXIS 27953 (C.D. Cal. Mar. 17, 2011)..........................13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)......................................................................9, 18, 23

*Heston v. Taser Int'l., Inc.*,
   431 Fed. Appx. 586 (9th Cir. 2011).........................................................16

*Hogar Dulce Hogar v. Cmty. Dev. Comm'n of the City of Escondido*,
   157 Cal. App. 4th 1358 (2007) ................................................................12

*Hooper v. Demco, Inc.*,
   37 F.3d 287 (7th Cir. 1994) ....................................................................12

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

*Idaho Watersheds Project v. Jones*,
    253 Fed. Appx. 684 (9th Cir. 2007).................................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .......................................................18, 22, 23

*In re Conservatorship of Whitley*,
    50 Cal. 4th 1206 (2010) .........................................................................17

*In re Ferrero Litig.*,
    2012 U.S. Dist. LEXIS 94900 (S.D. Cal. July 9, 2012).......................20, 23

*In re Ferrero Litig.*,
    278 F.R.D. 552 (S.D. Cal. 2011) ..............................................................21

*In re Yeganeh*,
    2006 U.S. Dist. LEXIS 79132 (N.D. Cal. Oct. 23, 2006) ........................19

*Ingram v. Oroudjian*,
    647 F.3d 925 (9th Cir. 2011) ..................................................................20

*Jefferson v. Chase Home Fin.*,
    2009 U.S. Dist. LEXIS 64607 (N.D. Cal. July 10, 2009) .........................19

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) ....................................................................9

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1988) ..................................................................17

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) .....................................................................18

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ....................................................18, 19, 22, 24

*Kim v. Euromotors West/The Auto Gallery*,
    149 Cal. App. 4th 170 (2007) ..............................................................7, 10

*Koppel v. Wien*,
    743 F.2d 129 (2d Cir. 1984) ...................................................................13

vii

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ..................................................................15

*Lazar v. Super. Ct.*,
   12 Cal. 4th 631 (1996) ............................................................................16

*Leiserson v. City of San Diego*,
   202 Cal. App. 3d 725 (1988) ...................................................................12

*Lindelli v. Town of San Anselmo*,
   139 Cal. App. 4th 1499 (2006) ..................................................................8

*Lyons v. Chinese Hosp. Ass'n*,
   136 Cal. App. 4th 1331 (2006) .............................................................8, 16

*Maria P. v. Riles*,
   43 Cal. 3d 1281 (1987) ..........................................................................9, 11

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988) .................................................................21

*McGown v. City of Fontana*,
   565 F.3d 1097 (9th Cir. 2009) .................................................................23

*Milano v. Interstate Battery Sys. of Am., Inc.*,
   2012 U.S. Dist. LEXIS 93192 (N.D. Cal. July 5, 2012) .....................7, 18

*Miley v. Principi*,
   242 F.3d 1050 (Fed. Cir. 2001) ...............................................................13

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ...................................................................8

*Murillo v. Pac. Gas & Elec. Co.*,
   2010 U.S. Dist. LEXIS 73427 (E.D. Cal. July 21, 2010)........................22

*Natural Gas Anti-Trust Cases*,
   2006 WL 5377849 (Cal. Super. Ct. Dec. 11, 2006) ................................22

*Northington v. Davis*,
   23 Cal. 3d 955 (1979) ..............................................................................12

viii

*Parkinson v. Hyundai Motor Am.*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ...............................................................passim

*Parks v. Eastwood Ins. Servs., Inc.*,
   2005 U.S. Dist. LEXIS 46115 (C.D. Cal. June 29, 2005).........................................24

*Parks v. Eastwood Ins. Servs., Inc.*,
   240 Fed. Appx. 172 (9th Cir. 2007).............................................................22, 25

*Paulson v. City of San Diego*,
   2007 U.S. Dist. LEXIS 43587 (S.D. Cal. June 13, 2007) .........................................15

*Perez v. Safety-Kleen Sys.*,
   448 Fed. Appx. 707 (9th Cir. 2011)..................................................................18

*Posada v. Lamb County*,
   716 F.2d 1066 (5th Cir. 1983) .......................................................................12

*Reveles v. Toyota by the Bay*,
   57 Cal. App. 4th 1139 (1997) ........................................................................17

*Robinson v. Kimbrough*,
   652 F.2d 458 (5th Cir. 1981) ....................................................................10, 13

*Ryan v. Cal. Interscholastic Fed'n*,
   94 Cal. App. 4th 1033 (2001) ........................................................................16

*Sablan v. Dep't of Fin.*,
   856 F.2d 1317 (9th Cir. 1988) .......................................................................12

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
   155 Cal. App. 3d 738 (1984) .........................................................................22

*Schwarz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995) ..........................................................................19

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ..................................................................................8

*Serrano v. Stefan Merli Plastering Co., Inc.*,
   52 Cal. 4th 1018 (2011) ...............................................................................8

ix

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982) ..................................................................................21

*Stivers v. Pierce*,
    71 F.3d 732 (9th Cir. 1995) ......................................................................13

*StreamCast Networks, Inc. v. IBIS LLC*,
    2006 U.S. Dist. LEXIS 97607 (C.D. Cal. May 1, 2006)...........................16

*Sullivan v. Pa. Dep't. of Labor, etc.*,
    663 F.2d 443 (3d Cir. 1981) .....................................................................10

*Tipton-Whittingham v. City of Los Angeles*,
    34 Cal. 4th 604 (2004) ........................................................................10, 11

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ....................................................................20

*Unocal Corp. v. United States*,
    222 F.3d 528 (9th Cir. 2000) ....................................................................16

*Vasquez v. Rackauckas*,
    2011 U.S. Dist. LEXIS 83696 (C.D. Cal. July 28, 2011)...........................24

*Vasquez v. Super. Ct.*,
    4 Cal. 3d 800 (1971) ................................................................................15

*Videtto v. Kellogg USA*,
    2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20, 2009) ...........................14

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) .....................................................................22

*Westside Cmty. for Indep. Living, Inc. v. Obledo*,
    33 Cal. 3d 348 (1983) ........................................................................10, 12

*Whited v. Galindo*,
    467 B.R. 201 (Bankr. S.D. Cal. 2012) ......................................................19

*Williams v. Gerber Prods. Co.*,
    552 F. 3d 934 (9th Cir. 2008) ...................................................................13

x

*Wilson v. Airborne, Inc.*,
   2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ........................22

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
   556 F.3d 815 (9th Cir. 2009) ...................................................................6

*Woodland Hills Residents Assn., Inc. v. City Council*,
   23 Cal. 3d 917 (1979) ...................................................................8, 9, 15

**STATUTES**

Cal. Civ. Code § 1760.............................................................................7

Cal. Civ. Code § 1780(e).......................................................................1, 7

Cal. Civ. Code § 1782............................................................................14

Cal. Code Civ. P. § 1021.5....................................................................1, 8

Cal. Code Civ. P. § 1033.5(a)(1)..............................................................25

Cal. Code Civ. P. § 1033.5(a)(3)..............................................................25

Cal. Code Civ. P. § 1033.5(a)(4)..............................................................25

Cal. Code Civ. P. § 1033.5(a)(7)..............................................................25

Cal. Code Civ. P. § 1033.5(c)..................................................................25

**OTHER AUTHORITIES**

Center for Science in the Public Interest, *Starvation Diet: FDA Lacks Adequate
   Resources for its Nutritional Health and Consumer Protection Missions* (2003) ......17

Devore et al., *Dietary Fat Intake and Cognitive Decline in Women With Type 2
   Diabetes*, 32 Diabetes Care 635-40 (2009) ...................................................6

MetLife Mature Market Institute, *Market Survey of Long-Term Care Costs* (Nov.
   2012) ...............................................................................................6

## **INTRODUCTION**

Plaintiff Mary Henderson, and her counsel The Weston Firm, P.C., and The Law Offices of Ronald A. Marron, APLC (collectively "Movants"), respectfully move for an award of attorneys' fees and costs under the fee-shifting provisions of California's Private Attorney General Statute, Cal. Code Civ. P. § 1021.5, and Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e) (formerly § 1780(d)), because: (1) this lawsuit induced Smucker to remove challenged label claims Plaintiff alleged were deceptive and reformulate one of the products to reduce its trans fat content, promoting the public's health; and (2) Smucker's settling Plaintiff's claims entitles Movants to fees as "prevailing" parties within the meaning of the CLRA.

## **FACTS**

## I.    **THE LAWSUIT & ITS GOALS**

On June 18, 2010, Mary Henderson filed this suit alleging the packaging of Smucker's Crisco Shortening and Uncrustables frozen sandwiches misleads consumers, in violation of California's Unfair Competition Law, False Advertising Law, and CLRA, into believing the products are healthy, when they actually contain dangerous amounts of artificial trans fat (in the form of partially hydrogenated vegetable oil) and high fructose corn syrup. Compl. (Dkt. No. 1). On Crisco, Ms. Henderson challenged the phrases, "50% Less Saturated Fat Than Butter," "Use Instead of Butter or Margarine for Baking," "All Vegetable," and a bar chart comparing its saturated fat content to butter. FAC ¶¶ 64-67 (Dkt. No. 4). On Uncrustables, Plaintiff challenged the phrases "Whole Grain," "Whole Wheat," "wholesome," and "homemade goodness." *Id.* ¶¶ 68-74.

Movants' goal in filing the lawsuit was either Smucker's removal of trans fat from the products, or its removal of the offending packaging claims. Weston Decl. Ex. 1 ("[O]ur primary goal is the removal of trans fat from Smucker products. . . . If Smucker is willing to commit to remove trans fat from the products described in the complaint by a future date we can confer on, we can settle this action now . . . ."). Although the parties never formally settled, Movants achieved much of this goal.

1

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

## II.   SMUCKER MODIFIES THE PRODUCTS' PACKAGING AND BEGINS DISCUSSING REFORMULATION IN REACTION TO THE LAWSUIT

"In October 2010," six months after the CLRA demand letter was served on Smucker and four months after the action was filed, "Smucker began the process of removing 'wholesome' from the packaging of Uncrustables." Resweber Decl. ¶ 18 (Dkt. No. 125). Smucker removed this same "wholesome" language from its Uncrustables website, "████████████████████" Weston Decl. Exs. 2-3. A few months later, in January 2011, Smucker's upper management ████████████████████████ ████████████████████████████████ Uncrustables. *Id.* Ex. 4. Smucker had never discussed this before the lawsuit. *See id.* Exs. 5-6. As with Uncrustables, following the lawsuit's filing, "Smucker removed the 'saturated fat comparison chart' from the packaging of the Crisco Shortening Products in 2010." Resweber Decl. ¶ 14.

## III.   THE PARTIES' SETTLEMENT NEGOTIATIONS

On February 22, 2012, the parties attended a settlement conference before the Honorable Victor B. Kenton. Dkt. No. 185. A month prior, on January 30, Ms. Henderson proposed a settlement whereby Smucker would: (a) modify Crisco's label to remove the "50% Less Saturated Fat Than Butter" statement and the bar chart; (b) remove PHVO from Uncrustables by June 1, 2013; and (c) refrain from using the word "wholesome" to advertise any product containing PHVO. Weston Decl. Ex. 7 at 2.

On February 14, 2012, Ms. Henderson provided Smucker her Settlement Conference Statement detailing Plaintiff's case against Smucker. She noted that "Plaintiff's counsel have generally advised Smucker's counsel that a settlement would need to involve injunctive relief in the form of removing PHVO from the products within a reasonable time period and/or modifying the offending labeling claims so long as the products contain PHVO." *Id.* Ex. 8, Settlement Conference Statement at 10. Plaintiff also noted Smucker had "reject[ed] Plaintiff's offer but fail[ed] to 'advise Plaintiff of the terms upon which . . . Defendant is prepared to settle the case,'" in violation of Judge Kenton's Settlement Conference Order. *Id.* Instead, Smucker stated it

2

was "'willing to discuss some modification to the labels,' but fail[ed] to advise what changes it would be willing to make, and stat[ed] that 'at this time,' reformulating Uncrustables to remove PHVO by June 1, 2013 'is not feasible,' but ma[de] no suggestion for when Smucker could reformulate the product." *Id.* (alteration omitted). The February 22 Settlement Conference lasted several hours, during which Plaintiff provided Smucker with three firm offers, each involving some combination of reformulation and removal of challenged claims.

On February 28, Smucker rejected the offers by telephone. On March 28 and April 10, 2012, Judge Kenton held telephonic settlement conferences, Dkt. Nos. 189, 192, suggesting a further in-person conference, to which Plaintiff agreed and Smucker resisted, and scheduling a conference for May 17. In advance of the conference, on May 1, Ms. Henderson sent Smucker another settlement offer, this time proposing Smucker: (a) remove "50% Less Saturated Fat Than Butter," and the bar chart, from Crisco unless the product contains less than 0.1 grams of trans fat per serving; (b) cease using "wholesome" or "homemade goodness" on Uncrustables' packaging through May 31, 2014, if the product contains trans fat; (c) remove trans fat from Uncrustables by June 1, 2014; and (d) stop advertising any products made with trans fat as "wholesome." Weston Decl. Ex. 9. Smucker never responded. *Id.* ¶ 12.

## IV.   SMUCKER REMOVES TRANS FAT FROM UNCRUSTABLES

In the Summer of 2012, after Smucker settled Ms. Henderson's claims with the Trustee of her bankruptcy estate, counsel noticed Smucker had reformulated Uncrustables to remove much of its trans fat, substantially in conformance with Plaintiff's May 1 offer, which her counsel noted in a September declaration. Dkt. No. 218-1 ¶ 11. *See also* Weston Decl. Exs. 11-12 (Uncrustables packaging at time lawsuit was filed, while lawsuit was pending, and currently). On October 26, 2012, Plaintiff requested from Smucker, both by email and telephone, details concerning the reformulation. Smucker has ignored the requests. Weston Decl. ¶ 13 & Ex. 10.

3

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

## V.    SMUCKER SETTLES MS. HENDERSON'S INDIVIDUAL CLAIM

As the Court is aware, after Ms. Henderson reopened her bankruptcy to disclose her pre-petition interest in this suit, Smucker settled her pre-petition claim for $22,500 pursuant to a June 2012 "Settlement Agreement and Release." Dkt. No. 212-2 at 12-21. The Settlement Agreement "resolve[d] the Estate's interest in the Class Action Case," *id.* at 12 ¶ E, defined as Ms. Henderson's "pre-petition interest in a pending class action lawsuit . . . number 2:10-cv-04524 GHK (VBKx)," *id.* ¶ C.

The Settlement Agreement expressly inures to the benefit of Ms. Henderson and her attorneys, providing:

> [T]his Agreement, including but not limited to the release set forth above, shall inure to the benefit of and be binding upon each of the parties, ***including the Debtors***, ***and each of their*** . . . representatives, ***attorneys***, legal representatives, . . . and all persons acting by, through, under or in concert with any of them.

*Id.* at 15-16 ¶ 4.2 (emphasis added).

Moreover, Smucker "acknowledge[d] that this Agreement constitutes a compromise of disputed claims" and "assume[d] the risk of any damages, injuries, disabilities, or errors . . . which may hereafter appear, develop or occur as a result of, or in relation to the claims raised or the causes of action brought in the respective lawsuits." *Id.* at 16 ¶ 5.1.

## VI.    SUMMARY OF MOVANTS' SUCCESSES

In sum, this lawsuit has resulted in the following successes, either directly through the Settlement Agreement, or as a catalyst for changes to Smucker's challenged business practices: (a) a net monetary recovery of $22,500; (b) removal of "wholesome" from Uncrustables; (c) removal of "homemade goodness" from Uncrustables; (d) removal of trans fat from Uncrustables; and (e) removal of the bar chart comparing Crisco's saturated fat content to butter.

4

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

## VII.   THE LAWSUIT SAVED CONSUMERS' LIVES AND MONEY

The benefit of these successes is substantial. Epidemiologist Dr. Nathan Wong explains that the Uncrustables reformulation, removing about 12.6 million grams of trans fat from the diet of American consumers, created enormous physical and economic public benefits. *See generally* Wong Decl. ¶¶ 27-52.

Citing an epidemiological study showing an increase in trans fat consumption of 2%, equivalent to 4.4 grams of trans fat, is responsible for 100,000 deaths from coronary heart disease each year, Dr. Wong explains that the reformulation can be credited with saving an estimated 2.86 lives per year. *See* Wong Decl. ¶¶ 27-33. Dr. Wong also estimates the reformulation will save 1.39 deaths from stroke annually. *Id.* ¶ 50. The FDA sets the value of one human life at $7.9 million for regulatory purposes, meaning the value of Smucker's removal of trans fat in the saving of lives is approximately $33.6 million per year ((2.86 + 1.89) * ($7.9M)). *See id.* ¶ 34, 50. But there are also direct monetary savings from the decreased risk of disease associated with the reformulation.

The Center for Disease Control estimates coronary heart disease costs the U.S. $108.6 billion per year in medical spending and lost productivity. With trans fat responsible for a sixth of CHD incidents, this means each gram of trans fat costs the U.S. approximately 3¢ due to CHD. *Id.* ¶¶ 35-37. Given the removal of 12.6 million grams from the American diet, this is between $378,000 and $519,090 in saved costs annually. *Id.* ¶¶ 38-40. Dr. Wong makes similar estimates for the savings due to decreased risk for colorectal cancer ($444,161); Alzheimer's disease (approximately $30 million); and stroke ($367,000). *Id.* ¶¶ 44, 47, 51 (estimating more than $31 million in total saved healthcare costs).[1]

There may be similar cost savings from other harmful and expensive conditions that trans fat causes, which are not as easily quantified. For example, a carefully

---

[1] Even excepting the expensive costs associated with care for Alzheimer's patients, Dr. Wong estimates between $1,189,161 and $1,330,251 in saved costs associated with CHD, cancer and stroke.

controlled study of 1,486 diabetic women found the high trans fat consumption group suffered cognitive decline equal to seven years of added aging compared to those who consumed just 2.1 grams less of trans fat.[2] Expenses associated with diabetes-related dementia and cognitive decline can be enormous. This average trans-fat induced cognitive decline, equal to seven years of natural aging, would in many cases be the difference between self-sufficiency and an annual bill of $95,265 for nursing home care or $42,600 annually for assisted living centers.[3]

While the health and monetary benefits of Smucker's Uncrustables reformulation are thus compelling, these benefits are actually even greater, given the likelihood Smucker's removal of health claims from Crisco and Uncrustables reduced their sales.

## ARGUMENT

## I.   MOVANTS ARE ENTITLED TO FEES

### A.   California Law Applies to this Motion

"An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) (citation omitted). "The task of a federal court in a diversity action is to approximate state law [regarding attorneys' fee awards] as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Farmers Ins. Exch. v. Sayas*, 250 F.3d 1234, 1236 (9th Cir. 2001) (quoting *Gee v. Temeco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980)). Accordingly, "California substantive law determines the availability and amount of attorney's fees in this diversity case." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 829 (9th Cir. 2009) (citation omitted); *see also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010).

---

[2] *See* Devore et al., *Dietary Fat Intake and Cognitive Decline in Women With Type 2 Diabetes*, 32 Diabetes Care 635-40 (2009).

[3] MetLife Mature Market Institute, *Market Survey of Long-Term Care Costs* (Nov. 2012), *available at* https://www.metlife.com/mmi/research.

Here, Movants invoke the fee-shifting provisions of California's CLRA and Private Attorney General Statute, which "are designed to incentivize counsel to pursue consumer interests through publicly beneficial litigation," *Milano v. Interstate Battery Sys. of Am., Inc.*, 2012 U.S. Dist. LEXIS 93192, at *2 (N.D. Cal. July 5, 2012).

### B.   The CLRA Requires Fees Be Awarded to a "Prevailing Plaintiff"

The CLRA provides the "court *shall award* court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e) (emphasis added). "The legislative policy to allow prevailing plaintiffs reasonable attorneys' fees is clear. Section 1780 provides remedies for consumers who have been victims of unfair or deceptive business practices. The provision for recovery of attorney's fees allows consumers to pursue remedies in cases . . . where the compensatory damages are relatively modest." *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) (internal citation omitted). This provision is "integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute," *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1086 (1999), and must "be liberally construed and applied to promote [the statute's] underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *See* Cal. Civ. Code § 1760; *accord Hayward*, 108 Cal. App. 4th at 512-13 ("section 1760 expressly directs [courts] to liberally construe section 1780 to protect consumers"). A fee award to a prevailing plaintiff in a CLRA action is thus mandatory, even when resolved before trial. *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-79, 181 (2007).

### C.   The Private Attorney General Statute Separately Entitles a "Successful Party" to Fees in Public Interest Cases

"[S]ection 1021.5 authorizes an award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest." *Serrano v. Stefan Merli Plastering Co.*,

*Inc.*, 52 Cal. 4th 1018, 1020 (2011) ["*Stefan*"]. Consistent with the policies underlying the statute, the entitlement belongs to both the litigant and her counsel. *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499, 1509 (2006); *see also Serrano v. Priest*, 20 Cal. 3d 25, 44 (1977) (purpose of fee-shifting statutes is to "award . . . substantial attorney fees to those public-interest litigants and their attorneys . . . who are successful in such cases" and thereby incentivize "representation of interests of similar character in future litigation"); *accord Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

"Although the section 'is phrased in permissive terms . . . the discretion to deny fees to a party that meets its terms is quite limited,' and generally requires a full fee award unless special circumstances would render such an award unjust." *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803, at *9-10 (C.D. Cal. Apr. 7, 2009) (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1344 (2006)). Fees are awarded when:

> (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuiary, has been conferred on the general public or a large class of persons . . .", and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . ."

*Stefan*, 52 Cal. 4th at 1026 (quoting Cal. Code Civ. P. § 1021.5, and citing *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 935 (1979)).[4] This statute "recogni[zes] that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to

---

[4] Section 1021.5 includes a fourth requirement, that fees should not be deducted from a class's monetary recovery, but this is inapplicable here. *See Charlebois v. Angels Baseball LP*, 2012 U.S. Dist. LEXIS 91069, at *7 (C.D. Cal. May 30, 2012).

enforce such important public policies will as a practical matter frequently be infeasible." *Woodland Hills*, 23 Cal. 3d at 933.

### D. Movants are "Prevailing" and "Successful" Within the Meaning of the CLRA and Private Attorney General Statute

#### 1. Legal Standard

Courts treat the terms "prevailing plaintiff" in the CLRA, and "successful party" in section 1021.5, synonymously, because "[t]he language in the two provisions is not materially different," *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001).

"In order to effectuate" the policy underlying section 1021.5, and consistent with the construction of comparable statutes, the California Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party.'" *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004). "[A] party need not prevail on every claim to be considered a successful party within the meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) (citation omitted). Rather, a party is successful if he "prevail[s] on the main issue, even though not to the extent of his original contention." *Graham*, 34 Cal. 4th at 507 n.4 (citation omitted). Consistent with this broad view of litigation success, the California Supreme Court has adopted the test set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) as "the appropriate standard" for a "successful party" under section 1021.5, "as follows: 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Maria P. v. Riles*, 43 Cal. 3d 1281, 1292 (1987) (citation omitted). "In determining whether a plaintiff is a successful party for purposes of section 1021.5, '[t]he critical fact is the impact of the action, not the manner of its resolution.'" *Graham*, 34 Cal. 4th at 566 (quoting *Maria P.* 43 Cal. 3d at 1290-91 (quoting *Folsom v. Butte County Ass'n. of Gov'ts*, 32 Cal. 3d 668, 685 (1982))). Thus, "an attorney fee award may be justified even when plaintiff's legal action does not result in a favorable final judgment," *id.* at 565.

Instead, "attorney fees may be proper whenever an action results in relief for the plaintiff, whether the relief is obtained through a 'voluntary' change in the defendant's conduct, through a settlement, or otherwise." *Id.* at 566-67 (citing *Sullivan v. Pa. Dep't. of Labor, etc.*, 663 F.2d 443, 447-50 (3d Cir. 1981); *Robinson v. Kimbrough*, 652 F.2d 458, 465-66 (5th Cir. 1981); *Am. Constitutional Party v. Munro*, 650 F.2d 184, 187-88 (9th Cir. 1981)). Therefore, "a party may be deemed successful even if, as here, the case has been dismissed." *Abouab v. City and County of San Francisco*, 141 Cal. App. 4th 643, 668 (2006). As with section 1021.5, "[i]t is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes [under the CLRA] if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing the suit." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (quotation omitted). Alternatively, a party "prevails" under the CLRA if there is a "net monetary recovery." *Parkinson*, 796 F. Supp. 2d at 1169 (citing *Kim*, 149 Cal. App. 4th at 178-79).

### 2.    *Movants Are "Prevailing" and "Successful" Because This Lawsuit Was the Catalyst for Changes to Smucker's Conduct*

Under the catalyst theory, "[a] plaintiff will be considered a 'successful party' where an important right is vindicated 'by activating defendants to modify their behavior.'" *Graham*, 34 Cal. 4th at 567 (quoting *Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 352-53 (1983) ["*Obledo*"]). Both the CLRA and section 1021.5 recognize this theory of recovery and deem a plaintiff "prevailing" or "successful" if her lawsuit caused changes to the defendant's challenged behavior. *See Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004) ("California law continues to recognize the catalyst theory and does not require 'a judicially recognized change in the legal relationship between the parties' as a prerequisite for obtaining attorney fees under Code of Civil Procedure section 1021.5."); *Graciano*, 144 Cal. App. 4th at 150-51 (Under the CLRA, "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation

10

objectives, whether by judgment, settlement, *or otherwise*. . . . In assessing litigation success, . . . courts should respect substance rather than form." (emphasis added; internal quotation marks, alteration, and citations omitted)).

When proceeding under a catalyst theory, a plaintiff demonstrates she is a "successful party" under section 1021.5 by showing: (1) the suit was a catalyst motivating the relief; (2) the suit had merit and achieved its catalytic effect by threat of victory, not nuisance; and (3) an attempt to settle the action. *See Tipton-Whittingham*, 34 Cal. 4th at 608. This application makes such a showing.

a.  The Lawsuit Motivated Smucker's Changed Practices

"[T]he first prong of  . . . [the catalyst theory] test requires a two-step process: a court should compare the relief sought by the plaintiff . . . with the relief actually obtained, and, if it is of the same general type, the court should assess whether there was a causal connection between the lawsuit and the relief obtained." *Idaho Watersheds Project v. Jones*, 253 Fed. Appx. 684, 685-86 (9th Cir. 2007) (Mem.) (citing *Ctr. for Biological Diversity v. Scarlett*, 452 F. Supp. 2d 966, 970 (N.D. Cal. 2006)).

"The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two." *Maria P.*, 43 Cal. 3d at 1291 (quoting *Folsom*, 32 Cal. 3d at 685 n.31 (citation omitted)).

i.  *Movants Obtained Much of the Exact Relief They Sought*

While under catalyst theory the relief obtained need only be of the same general type as that sought, *Idaho Watersheds Project*, 253 Fed. Appx. at 685-86, much of the relief Plaintiff obtained here is exactly what her lawsuit sought. Plaintiff's primary goal was the removal of trans fat or the challenged claims from the Smucker products. Weston Decl. Exs. 1, 7-9; FAC, Prayer for Relief. Thus, when Smucker removed trans fat from Uncrustables, "wholesome" and "homemade goodness" claims from Uncrustables' packaging and website, and the saturated fat comparison chart from Crisco's packaging, Plaintiff obtained many of her precise demands, prevailing on "*a[]*"

11

*significant issue* in litigation which achieve[d] *some of the benefit* [she] sought in bringing the suit." *See Graciano*, 144 Cal. App. 4th at 153.

> ii.   *There is a Casual Connection Between This Lawsuit and Smucker's Labeling Changes and Reformulation*

Although for a plaintiff seeking fees on a catalyst theory, "it can be difficult to prove causation . . . . [, w]hen action is taken by the defendant after plaintiff's lawsuit is filed the chronology of events may permit the inference that the two events are causally related." *Californians for Responsible Toxics Management v. Kizer*, 211 Cal. App. 3d 961, 968 (1989) ["*Kizer*"] (citing *Leiserson v. City of San Diego*, 202 Cal. App. 3d 725, 736 (1988)). Indeed, "[c]lues to the provocative effects of the plaintiffs' legal efforts are often best gleaned from the chronology of events: defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways." *Posada v. Lamb County*, 716 F.2d 1066, 1072 (5th Cir. 1983) (citations omitted).

"Importantly, the catalyst theory does not require that [a plaintiff]'s litigation be the only cause of defendant's acquiescence." *Hogar Dulce Hogar v. Cmty. Dev. Comm'n of the City of Escondido*, 157 Cal. App. 4th 1358, 1365 (2007). "If plaintiff's lawsuit 'induced' defendant's response or was a 'material factor' or 'contributed in a significant way' to the result achieved then plaintiff has shown the necessary causal connection." *Kizer*, 211 Cal. App. 3d at 967 (citing *Northington v. Davis*, 23 Cal. 3d 955, 960 n.2 (1979); *Obledo*, 33 Cal. 3d at 353; *Cal. Common Cause v. Duffy*, 200 Cal. App. 3d 730, 743 (1987)).

Because all of the changes to Smucker's practices supporting Movants' catalyst theory occurred after the lawsuit was filed, the chronology of events raises an inference that the suit was causally related to the changes. *Kizer*, 211 Cal. App. 3d at 968; *c.f. Sablan v. Dep't of Fin.*, 856 F.2d 1317, 1326 (9th Cir. 1988) (district court properly "inferr[ed] from th[e] sequence of events a causal connection between [the plaintiff's suit] and the government's change in [policy]"); *Hooper v. Demco, Inc.*, 37 F.3d 287, 293 (7th Cir. 1994) ("In light of the close proximity of time between the filing of the suit

12

---

and the settlement (two weeks), the suit seems to have acted as a 'catalyst' for the settlement and thus satisfies the causal link requirement."); *Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir. 1984) ("Plaintiffs' undisputed facts as to the sequence of events almost entitle them to summary judgment on the issue of causation."); *Robinson*, 652 F.2d at 465 ("the chronology of events revealed that plaintiffs' lawsuit had vindicated the plaintiffs' civil rights by activating defendants to modify their behavior"); *Ctr. for Auto Safety v. Dole*, 595 F. Supp. 98, 102 (D.D.C. 1984).

And while "there is no absolute prohibition against basing such a showing [of causation] on timing alone," *Miley v. Principi*, 242 F.3d 1050, 1054 (Fed. Cir. 2001), Movants present compelling evidence that Smucker modified the products' packaging in reaction to the lawsuit: one of its employees removed "wholesome" from Uncrustables' website because of ███████████ Weston Decl. Exs. 2-3.[5]

### b. The Lawsuit Had Merit

A lawsuit has merit for purposes of catalyst theory if it "is not 'frivolous, unreasonable or groundless,'" *Graham*, 34 Cal. 4th at 575 (quoting *Stivers v. Pierce*, 71 F.3d 732, 752 n.9 (9th Cir. 1995)). Under this forgiving standard, the action had merit. Had any of Ms. Henderson's claims been "frivolous, unreasonable or groundless," they would have been dismissed at the pleading stage. But the Court denied Smucker's Motion to Dismiss almost entirely. *Henderson v. J.M. Smucker Co.*, 2011 U.S. Dist. LEXIS 27953 (C.D. Cal. Mar. 17, 2011).[6] Sister district courts have found merit in

---

[5] If the Court finds Movants have yet to establish a causal connection, and does not otherwise award attorneys' fees, Movants respectfully request they be allowed discovery on the issue. *See Graham*, 34 Cal. 4th at 563 (allowing discovery for a year after the case was dismissed and holding an evidentiary hearing in order to determine plaintiffs' entitlement to attorneys' fees); *Chin v. Chrysler LLC*, 538 F.3d 272, 276 (3d Cir. 2008) (plaintiffs allowed discovery on the issue of whether lawsuit was a catalyst to Chrysler's recall of vehicles).

[6] Whether a business practice is fraudulent usually cannot be resolved on the pleadings, but an exception occurs when claims are unreasonable or frivolous, even if properly pled. *See Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 939-40 (9th Cir. 2008); *Videtto*

13

1   similar claims. *See*, *e.g.*, *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1123-24

2   (N.D. Cal. 2010) (upholding claim against "wholesome" advertisement used on granola

3   bars containing trans fat).

4       Moreover, shortly before Smucker obtained dismissal, Plaintiff had prepared a

5   lengthy summary judgment motion detailing Smucker's violations of law, including

6   through documentary, testimonial and expert evidence, a review of which confirms that

7   the claims were not frivolous, unreasonable or groundless. Weston Decl. Ex. 14. Besides

8   independently demonstrating merit, before reformulating Uncrustables, Smucker had a

9   complete draft of the motion, *see* Dkt. No. 56, and was aware of the risk that Plaintiff

10  would prevail on the merits imminently, in part or in whole.

11              c.  There Was a Reasonable Attempt to Settle The Litigation

12      In order to satisfy the third prong of the catalyst theory for recovery under section

13  1021.5—but not under the CLRA, which has no such requirement—before filing, "a

14  plaintiff must at least notify the defendant of its grievances and proposed remedies and

15  give the defendant the opportunity to meet its demands within a reasonable time."

16  *Graham*, 34 Cal. 4th at 577. "What constitutes a 'reasonable' time will depend on the

17  context," but "[l]engthy prelitigation negotiations are not required," *id.*

18      Prior to bringing the lawsuit, on March 29, 2010, Plaintiff's counsel sent Smucker

19  a letter notifying it "of the particular alleged violations of Section 1770," and demanding

20  that Smucker "correct, repair, replace, or otherwise rectify the goods or services alleged

21  to be in violation of Section 1770," Cal. Civ. Code § 1782. *See* Dkt. No. 18-1, Ex. A.

22  Counsel enumerated the specific claims challenged and why they were deceptive, and

23  demanded Smucker take corrective action, including ceasing to use the deceptive claims

24  on the products' labels, and noting that an action would be filed if Smucker failed to do

25  so. *Id.* On April 28, 2012, Smucker responded with a lengthy letter refusing the

26

27
───────────────────────────────
28  *v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20, 2009); Smucker
    unsuccessfully moved to dismiss the action on these exact grounds. Dkt. No. 18 at 12.

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

demands. Weston Decl. Ex. 13.[7] With the lawsuit not filed for another six weeks, Smucker had a reasonable time in which to avoid litigation. Moreover, this element is satisfied where a plaintiff "has been diligent in trying to secure a settlement rather than prolong the litigation." *Paulson v. City of San Diego*, 2007 U.S. Dist. LEXIS 43587, at *10 (S.D. Cal. June 13, 2007). That is the case here. Plaintiff made repeated settlement demands attempting to find some fair compromise, but Smucker mostly ignored them. In addition, Plaintiff requested Smucker attend further settlement conferences with Judge Kenton, which Smucker resisted, though Plaintiff's efforts led Judge Kenton to schedule a second conference, which was later vacated.

### 3.     The Remaining Requirements of Section 1021.5 Are Satisfied

Although fees under the CLRA requires nothing more than being a "prevailing" party, section 1021.5 imposes three other requirements. Each is satisfied here.

### a.     The Action Resulted in the Enforcement of an Important Right Affecting the Public

"[I]n determining the 'importance' of the particular 'vindicated' right, courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." *Woodland Hills*, 23 Cal. 3d at 936. The "enforcement of the California consumer protection laws" qualifies as "an important right affecting the public interest." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 703 (2006) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 503 (2003) (evaluating whether an advertisement is deceptive under UCL "has important public policy implications for California consumers and businesses")); *see also Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (consumer protection actions "have long been judicially recognized to be vital to the public interest" (citing *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971) ("Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost

---

[7] On January 7, 2011, Plaintiff's counsel sent a second letter expanding and clarifying the March 29 letter. *See* Dkt. No. 147-3.

priority in contemporary society.”))); *StreamCast Networks, Inc. v. IBIS LLC*, 2006 U.S. Dist. LEXIS 97607, at *28 (C.D. Cal. May 1, 2006) (noting “the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future.” (quoting *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 646 (1996))).

### b. A Significant Benefit Has Been Conferred on the General Public or a Large Class of Persons

This lawsuit conferred a significant benefit on the general public “by causing [Smucker] to change its labeling and advertising practices.” *See Colgan*, 135 Cal. App. 4th at 703. Without health and wellness packaging, consumers are less likely to purchase the products, and thus to consume trans fat. Moreover, the lawsuit caused Smucker to reduce trans fat in Uncrustables, thereby aiding in the prevention of coronary heart and a myriad of other diseases, saving American lives and dollars.

### c. The Necessity and Financial Burden of Private Enforcement Makes a Fee Award Appropriate

“The purpose of the ‘private attorney general’ doctrine is to encourage suits of societal importance which private parties would not otherwise have an incentive to pursue.” *Unocal Corp. v. United States*, 222 F.3d 528, 544 (9th Cir. 2000) (citation omitted). “An award is appropriate under this section where the burden of pursuing litigation is out of proportion to the individual plaintiff’s stake in the matter.” *Parkinson*, 796 F. Supp. 2d at 1170 (citing *Ryan v. Cal. Interscholastic Fed’n*, 94 Cal. App. 4th 1033, 1044 (2001)).

“The key question is ‘whether the financial burden placed on the party [claiming fees] is out of proportion to its personal stake in the lawsuit.’” *Heston v. Taser Int’l., Inc.*, 431 Fed. Appx. 586, 589 (9th Cir. 2011) (Mem.) (quoting *Lyons*, 136 Cal. App. 4th at 1351); *Charlebois*, 2012 U.S. Dist. LEXIS 91069, at *6 (element met where “the cost of the claimant’s legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter” (quoting *In re Conservatorship of Whitley*, 50 Cal. 4th

16

1206, 1215 (2010))). In short, the necessity and financial burden requirement "seeks economic equalization of representation in cases where private enforcement is necessary." *Whitley*, 50 Cal. 4th at 1214. "This requirement asks the court to examine: (1) the 'adequacy of public enforcement' (necessity prong); and (2) the financial disincentives and incentives of private action (financial burden prong)." *Charlebois*, 2012 U.S. Dist. LEXIS 90169, at *8 (quoting *Whitley*, 50 Cal. 4th at 1215).

This is such a case, involving claims that Smucker falsely advertised inexpensive retail products. Ms. Henderson's purchases over ten years totaled just $214.25, *see* Dkt. No. 218 at 25, illustrating the case's low value compared to the cost of its prosecution. Thus, the suit easily satisfies the "financial burden" prong. In addition, no government agency, such as the FDA, has sought to enforce California's false advertising laws against Smucker.[8] With inadequate public enforcement, the "necessity" prong is thus satisfied. *See*, *e.g.*, *Keith v. Volpe*, 858 F.2d 467, 486 (9th Cir. 1988) ("necessity" prong satisfied because "no governmental agency was willing to protect [plaintiff's] rights" and thus "to vindicate his rights, [plaintiff] had to bring the suit personally").

### 4.    Movants Are "Prevailing" Under the CLRA Because There Was a Net Monetary Recovery

Smucker's payment of $22,500 to resolve Ms. Henderson's claims satisfies the CLRA's standard of a "net monetary recovery" for entitlement to attorneys' fees. *See Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1151 (1997), *overruled on other grounds by Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1261 (2004).

## II.    MOVANTS' REQUESTED FEE OF $3,270,374 IS REASONABLE

"Whether an [attorney fee] award is justified and what amount the award should be are two distinct questions, and the factors relating to each must not be intertwined or

---

[8] The FDA's lack of resources to enforce FDCA regulations against misleading food labels is well-established. *See*, *e.g.*, Weston Decl. ¶ 18 & Ex. 15 (Center for Science in the Public Interest, *Starvation Diet: FDA Lacks Adequate Resources for its Nutritional Health and Consumer Protection Missions* (2003)).

17

merged." *Flannery v. Cal. Highway Patrol*, 61 Cal. App. 4th 629, 647 (1998). The first question, entitlement, is binary. If the answer, as here, is yes, the court must then determine a reasonable fee according to the prevailing law, which "does not require the detailed parsing of attorney labor" in cases of mixed success. *Perez v. Safety-Kleen Sys.*, 448 Fed. Appx. 707, 708 (9th Cir. 2011) (Mem.) (citing *Envtl. Prot. Info. Ctr. v. Cal. Dep't of Forestry & Fire Prot.*, 180 Cal. App. 4th 217 (2010)).

### A.   The Lodestar/Multiplier Method Determines a Reasonable Fee

"In determining the amount of reasonable attorney fees to be awarded under a statutory attorney fees provision, the trial court begins by calculating the 'lodestar' amount." *Bernardi v. County of Monterey*, 167 Cal. App. 4th 1379, 1393 (2008) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001)); *see also Milano*, 2012 U.S. Dist. LEXIS 93192, at *2 ("it is appropriate to use the lodestar method to determine the reasonableness of the requested fee award, as Plaintiff's right to a fee arises under two California fee-shifting statutes that are designed to incentivize counsel to pursue consumer interests through publicly beneficially litigation" (citations omitted)).

To do so, the court multiplies "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "[T]he court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment,'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975))).

In fee-shifting cases, fees need not be proportional to the recovery, since "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious . . . claims but relatively small potential damages to obtain redress from the courts," and such an approach would "seriously undermine [the] purpose in enacting [fee-shifting statutes]." *City of Riverside v. Rivera*, 477 U.S. 561, 576-78 (1986)

18

(upholding attorneys' fees of $245,456.25 for recovery of $33,350); *see also Jefferson v. Chase Home Fin.*, 2009 U.S. Dist. LEXIS 64607, at *5-6 (N.D. Cal. July 10, 2009) ("To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying section 1780." (quoting *Hayward*, 108 Cal. App. 4th at 512)); *In re Yeganeh*, 2006 U.S. Dist. LEXIS 79132, at *3-6 (N.D. Cal. Oct. 23, 2006) (court in underlying action awarded $2.3 million fees, and applied 1.5 multiplier for $3.5 million fee total, for recovery of $270,000); *Graciano*, 144 Cal. App. 4th at 150 ("The [CLRA's] provision for recovery of attorney's fees allows consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest. To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying section 1780." (quoting *Hayward*, 108 Cal. App. 4th at 512)); *Whited v. Galindo*, 467 B.R. 201, 215 (Bankr. S.D. Cal. 2012).

### B.   Counsel's $1,453,499 Lodestar is Reasonable

Counsel's lodestar is summarized in <u>Appendix 1</u>, based on 3,872.1 hours (2,460.3 attorney hours and 1,411.8 paralegal/law clerk hours), and supported by fair and reasonable rates and hours. *See* Fitzgerald Decl. Ex. 10-11 (detailed billing records).

#### 1.   Counsels' Rates are Reasonable

Counsel's rates are reasonable because they are in line with hourly rates charged by attorneys of comparable experience, reputation and ability for similar litigation. *See Ketchum*, 24 Cal. 4th at 1133; *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Courts look to prevailing market rates in the community in which the court sits. *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Accordingly, counsel's current rates are reasonable if they are in line with the prevailing rates for other attorneys practicing complex litigation in Southern California.

Here, counsel's requested rates are as follows:

19

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

| Attorney | Position | Hourly Rate |
|---|---|---|
| Ronald A. Marron | Partner | $650 |
| Gregory S. Weston | Partner | $525 |
| Jack Fitzgerald | Partner | $525 |
| Courtland Creekmore | Associate | $500 |
| Margarita Salazar | Associate | $450 |
| B. Skye Resendes | Associate | $385 |
| Maggie Realin | Associate | $375 |
| Melanie Persinger | Associate | $300 |
| Law Clerks | | $225 |
| Marron / Weston Paralegals & Legal Assistants | | $215 / $195 |

To assist courts in calculating the lodestar, a plaintiff must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. "The Ninth Circuit has advised that courts are allowed to rely on their own familiarity with the legal market and subject matter of the lawsuit when awarding attorneys' fees," *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 133572, at *14 (C.D. Cal. Oct. 17, 2011) (citing *Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011)).

***Rates Other Courts Have Awarded.*** "[R]ate determinations in other cases, particularly those settling a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Counsel's rates were recently approved as reasonable in other food and drug labeling class actions. *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 94900, at *11 (S.D. Cal. July 9, 2012); *Gallucci v. Boiron, Inc.*, 2012 U.S. Dist. LEXIS 157039, at *26 (S.D. Cal. Oct. 31, 2012). And the rates are supported by other court decisions. *See* Fitzgerald Decl. ¶¶ 3-13, 18 & Exs. 1-9.[9]

---

[9] Counsel's rates are also reasonable because they reflect counsel's practice of not billing or seeking reimbursement for several costs including photocopying, telephone, Lexis, Westlaw, PACER, faxes, regular postage, and meals, including while traveling. *See id.* ¶ 28. *Accord Parkinson*, 796 F. Supp. 2d at 1177 n.14 (similar unbilled costs factored into

20

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

*Survey Data.* "Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees." *B-K Lighting, Inc. v. Vision3 Lighting*, 2009 U.S. Dist. LEXIS 111968, at *18 (C.D. Cal. Nov. 16, 2009) (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988)). A National Law Journal survey confirms that counsel's rates are reasonable. *See* Fitzgerald Decl. ¶¶ 14-16 & Ex. 8.

*Blended Rate.* The reasonableness of counsel's rates is also shown by its blended rate, calculated as the total lodestar divided by the total hours of all timekeepers. The blended rate in this case is $375.38 ($1,453,499.50 divided by 3,872.1 hours), which compares favorably to blended lodestar rates approved in other actions. *See id.* ¶ 17.

### 2. *Counsels' Hours Expended are Reasonable*

Counsel are entitled to compensation for time reasonably spent at all points in the litigation, and courts should avoid engaging in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.*

Here, counsel expended 2,460.3 attorney hours and 1,411.8 paralegal and law clerk hours. Fitzgerald Decl. ¶ 21; App. 1. The three senior attorneys, Marron, Weston and Fitzgerald, have over thirty years combined experience in complex civil litigation, including false advertising and class actions. *See* Dkt. Nos. 114-15; *see generally Gallucci*, 2012 U.S. Dist. LEXIS 157039; *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011). Cumulatively, these attorneys worked 1,341.7 hours on the case, approximately 55% of the total attorney time. That this time is reasonable is further demonstrated by comparing the average hours billed per month to the averages approved as reasonable in other false advertising actions. *See* Fitzgerald Decl. ¶ 22.

---

requested lodestar). Similarly, counsel's lodestar does not include hours worked on this fee application after January 4, 2013, although all such hours are compensable. *See Serrano v. Unruh*, 32 Cal. 3d 621, 632-33 (1982).

21

### C.    A 2.25 Multiplier is Reasonable

After calculating the lodestar, "the court may adjust it . . . by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," *Bluetooth*, 654 F.3d at 941-42 (citations and quotation marks omitted). *See also Parks v. Eastwood Ins. Servs., Inc.*, 240 Fed. Appx. 172, 175 (9th Cir. 2007) (Mem.) (affirming enhancement "for novelty and complexity, results obtained, and contingency risk" and "delay in payment" (citations omitted)); *Graham*, 34 Cal. 4th at 579 (Lodestar "may be adjusted by the court based on . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award."); *Ketchum*, 24 Cal. 4th at 1131-38.

The purpose of the lodestar/multiplier method is to mirror the legal marketplace. Economically rational attorneys will not handle cases on standard hourly fees that are payable only if they win, so an enhancement helps determine a fee that is commensurate with what attorneys would expect to be compensated given the risk under these circumstances. *See San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to undertake difficult public interest cases").

Applying the prevailing standard and factors, "[m]ultipliers can range from 2 to 4, or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *see also Natural Gas Anti-Trust Cases*, 2006 WL 5377849, at *4 (Cal. Super. Ct. Dec. 11, 2006) ("This Court and numerous cases have applied multipliers of between 4 and 12 to counsel's lodestar in awarding fees."); *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, at *34-36 (C.D. Cal. Aug. 13, 2008) (applying 2.0 multiplier in false advertising case); *c.f. Murillo v. Pac. Gas & Elec. Co.*, 2010 U.S. Dist. LEXIS 73427, at *32-33 (E.D. Cal. July 21, 2010) (applying 1.5 multiplier in UCL action).

22

Mrs. Henderson requests a moderate lodestar multiplier of 2.25, for a total feel of $3,270,374, which is justified and within the range regularly approved in other cases.

### 1.   The Exceptional Results Obtained

"Foremost among the considerations" for applying a lodestar "is the benefit obtained for the class." *Bluetooth*, 654 F.3d at 942 (citing *Hensley*, 461 U.S. at 434-36; *McGown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)).

This is not a typical false advertising action where changed behavior is merely likely to save consumers money and promote freedom from deception, though such results are qualified as excellent. *See*, *e.g.*, *Ferrero*, 2012 U.S. Dist. LEXIS 94900, at *11 (awarding full lodestar because defendant's modification of deceptive advertisements on food was an "excellent result[] obtained for the Class"). Rather, because the false advertising here is *additionally* associated with significant, well-established health harms, Smucker's changed business practices will have great physical and economic public benefits. Smucker's removal of trans fat from Uncrustables filling alone will save more than four lives each year, equivalent to $33.6 million, and health care costs of up to another $31 million. *See* Wong Decl. ¶¶ 27-34, 49-50. Put in this light, Plaintiff's request is about 5% of the economic value assigned to **one year's** worth of public savings (or 10% with Alzheimer's costs excluded). This is well below the Ninth Circuit's 25% benchmark, *see Bluetooth*, 654 F.3d at 942 (citation omitted), and does not even take into account decreased trans fat consumption from decreased sales due to Smucker's removal of health and wellness claims from Crisco and Uncrustables.

### 2.   Contingency Risk, Preclusion of Other Employment, and Delay

"One of the most common fee enhancers . . . is for contingency risk." *Graham*, 34 Cal. 4th at 579. When attorneys undertake litigation on a contingent basis, a fee that is limited to the hourly fee that would have been paid by a fee-paying client, win or lose, is not a reasonable fee by market standards. *Greene v. Dillingham Constr. NA., Inc.*, 101 Cal. App. 4th 418, 428-29 (2002). Rather:

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

> A contingent fee *must be higher* than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Ketchum*, 24 Cal. 4th at 1132-33 (emphasis added) (citing Richard Posner, *Economic Analysis of Law* (4th ed. 1992)); s*ee also Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696, at *8 (C.D. Cal. July 28, 2011) ("The enormous time required and the substantial risk that no fees would be recovered justify a contingency enhancement, 'to bring the financial incentives' for taking such a case into line with work for fee-paying clients." (quoting *Ketchum*, 24 Cal. 4th at 1132)).

Like all class actions, this case was risky, with counsel's compensation entirely contingent upon Plaintiff prevailing. Indeed, the substantial risk of class action litigation is well-documented, Fitzgerald Decl. ¶¶ 23-25, and favors application of a multiplier. *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d at 1419 (primary purpose of contingency enhancement "is to compensate for the *risk* of loss generally in contingency cases *as a class*" (citing *Fadhl v. City & County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988))). In addition, devoting more than 3,700 hours and substantial costs to this action necessarily precluded counsel's other employment. *See Parks v. Eastwood Ins. Servs., Inc.*, 2005 U.S. Dist. LEXIS 46115, at *29 (C.D. Cal. June 29, 2005) ("It is evident counsel was heavily committed to this case . . . that undoubtedly precluded taking a certain amount of other work. This weighs in favor of an enhancement."). Indeed, counsel elected not to file certain cases in part because of its involvement in this case. Fitzgerald Decl. ¶ 26. Finally, largely due to Smucker's dragging the case out as long as possible and refusing to incorporate the changes it made in response to the lawsuit into a settlement agreement, Plaintiff and her counsel have litigated this case for 31 months, creating a docket with over 225 entries, dense with law and motion practice, and

24

*Henderson v. The J.M. Smucker Company*, Case No. 2:10-CV-04524 GHK (VBKx)
MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

engaging in extensive fact and expert discovery. Having not yet been paid, the delay favors a multiplier. *See Parks*, 240 Fed. Appx. at 175 (citations omitted); *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980) ("[P]ayment for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime. . . . A percentage adjustment to reflect the delay . . . therefore may be appropriate.").

### 3.   *Novelty, Difficulty and Skill*

This case was novel and difficult, involving complex federal labeling regulations, and concerning the marketing of a children's snack food and shortening containing trans fat, whose packaging bore health and wellness claims. Moreover, Smucker's counsel are experts in the areas of false advertising claims in the food industry, and class action litigation. Fitzgerald Decl. Ex. 9. That expertise made this case even more complex through the use of novel arguments and strategies designed to frustrate Movants' litigation goals. This case thus required skilled plaintiff's counsel. "[T]he Weston/Marron counsel . . . have ample experience handling class actions and complex litigation. It is also clear that both have particular familiarity with suits involving issues of mislabeling in the food industry. Even more specifically, both firms seem to have developed a niche expertise in litigation centered on trans fat." *Chacanaca v. Quaker Oats Co.*, 2011 U.S. Dist. LEXIS 65023, at *8-9 (N.D. Cal. June 14, 2011) (appointing Plaintiff's counsel interim class counsel over competing firm).

## III.   MOVANTS' REQUESTED COSTS OF $35,138.65 ARE REASONABLE

Under Cal. Code Civ. P. § 1033.5(a)(1), (3), (4), and (7), the Court must award a prevailing party costs for court fees; deposition costs for transcribing, recording and travel; service of process fees; and witness fees. In addition, § 1033.5(c) allows reimbursement of costs "reasonably necessary to conduct the litigation, rather than merely convenient or beneficial to its preparation." *Parkinson*, 796 F. Supp. 2d at 1176 (quotation omitted). Counsel has incurred $21,873.46 in recoverable costs and seeks $13,265.19 in "reasonably necessary" costs, which are both summarized in Appendix 2.

DATED: January 7, 2013                    Respectfully Submitted,

                                          /s/ Gregory S. Weston

                                          **THE WESTON FIRM**
                                          GREGORY S. WESTON
                                          JACK FITZGERALD
                                          MELANIE PERSINGER
                                          1405 Morena Blvd., Suite 201
                                          San Diego, CA 92110
                                          Telephone:  (619) 798-2006
                                          Facsimile:   (480) 247-4553

                                          **LAW OFFICES OF RONALD A. MARRON, APLC**
                                          RONALD A. MARRON
                                          SKYE RESENDES
                                          ALEXIS M. WOOD
                                          3636 4th Avenue, Suite 202
                                          San Diego, CA 92109
                                          Telephone:  (619) 696-9006
                                          Facsimile:   (619) 564-6665

                                          **Counsel for Plaintiff**

## APPENDIX 1: SUMMARY COUNSEL'S LODESTAR

**FEE LODESTAR (through January 4, 2013):**

| Firm and Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| *The Weston Firm:* | | | |
| Gregory S. Weston | 469.5 | $525 | $246,487.50 |
| Jack Fitzgerald | 669.5 | $525 | $351,487.50 |
| Courtland Creekmore | 494.3 | $500 | $247,150.00 |
| Melanie Persinger | 486.9 | $300 | $146,070.00 |
| Melodie Dan | 29.8 | $250 | $7,450.00 |
| Law Clerks | 19.0 | $225 | $4,275.00 |
| Paralegals | 1,225.6 | $195 | $238,992.00 |
| | | Subtotal: | $1,241,912.00 |
| *Law Offices of Ronald A. Marron, APLC:* | | | |
| Ronald A. Marron | 202.7 | $650 | $131,755.00 |
| Margarita Salazar | 18.7 | $450 | $8,415.00 |
| Skye Resendes | 36.8 | $385 | $14,168.00 |
| Maggie Realin | 52.1 | $375 | $19,537.50 |
| Law Clerks | 7.2 | $245 | $1,764.00 |
| Paralegals & Legal Assistants | 167.2 | $215 | $35,948.00 |
| | | Subtotal: | $211,587.50 |
| | | **TOTAL:** | **$1,453,499.50** |

**LITIGATION EXPENSE LODESTAR**

| | | | |
|---|---|---|---|
| The Weston Firm & The Law Offices of Ronald A. Marron APLC | | **TOTAL:** | **$35,138.65** |

I

## APPENDIX 2: SUMMARY OF COUNSEL'S EXPENSES

(1)     Expenses Recoverable Under Cal. Civ. P. Code § 1033.5(a)

| Date | Description | Amount |
|------|-------------|--------|
| 6/22/2010 | Filing Fee | $350.00 |
| 9/22/2010 | Service of complaint | $50.00 |
| 09/13/11 | Mileage for travel to Henderson deposition in Los Angeles | $68.85 |
| 09/14/11 | Parking for deposition of Mary Henderson | $38.00 |
| 09/14/11 | Los Angeles hotel accommodations for Mr. Marron for September 13, 2011 Henderson Deposition | $76.49 |
| 09/14/11 | Los Angeles hotel accommodations for Mr. Weston for September 13, 2011 Henderson Deposition | $76.49 |
| 09/14/11 | Los Angeles hotel accommodations for Ms. Henderson for September 13, 2011 Henderson Deposition | $76.49 |
| 09/14/11 | Ms. Henderson's train fare to deposition | $17.50 |
| 01/4/12 | Coach airfare and baggage fee for Mr. Marron's travel to and from Akron, Ohio for depositions of John Russel, Paul Wagstaff, Karen Milley, Joseph Stanziano, and Jim Nielsen | $509.70 |
| 01/4/12 | Coach Airfare for Mr. Creekmore to Akron, Ohio for depositions of John Russel, Paul Wagstaff, Karen Milley, Joseph Stanziano, and Jim Nielsen | $500.70 |
| 01/16/12 | Rental car in Ohio for depositions taken by Mr. Marron and Mr. Creekmore from January 17-19, 2012 | $350.00 |
| 1/17/2012 | Recording of depositions of John Russell, Karen Milley, and Paul Wagstaff | $3,166.00 |

II

| Date | Description | Amount |
|------|-------------|--------|
| 1/30/2012 | Mr. Weston's coach airfare and baggage fees for travel from San Diego to Ohio for depositions of Edward Hunter, Chris Resweber, Julie Gerbick, Kelly Crouse, and Steve Oakland | $466.19 |
| 1/31/2012 | Service of third party subpoena on B.A.R.C. Communications | $146.00 |
| 2/2/2012 | Service of Process Out of County (Failed, Bad Address) | $87.50 |
| 2/6/2012 | Service of third party subpoena on Covance Laboratories | $146.00 |
| 2/8/2012 | Mr. Fitzgerald's coach airfare for travel from San Francisco to Ohio for depositions of depositions of Edward Hunter, Chris Resweber, Julie Gerbick, Kelly Crouse, and Steve Oakland | $557.00 |
| 2/10/2012 | Transcript and Exhibits for deposition of Joseph Stanziano | $1,429.26 |
| 2/10/2012 | Transcript and Exhibits for deposition of Jim Nielsen | $934.24 |
| 2/10/2012 | Transcript and Exhibits for depositions of John Russell, Karen Milley, and Paul Wagstaff | $3,166.00 |
| 2/11/2012 | Hotel rooms for Mr. Weston and Mr. Fitzgerald while attending depositions of Edward Hunter, Chris Resweber, Julie Gerbick, Kelly Crouse, and Steve Oakland | $638.97 |
| 2/12/2012 | Baggage fee for Mr. Fitzgerald's flight to Akron for depositions of Edward Hunter, Chris Resweber, Julie Gerbick, Kelly Crouse, and Steve Oakland | $60.00 |
| 2/13/2012 | Rental car for Mr. Weston and Mr. Fitzgerald's Ohio depositions of Edward Hunter, Chris Resweber, Julie Gerbick, Kelly Crouse, and Steve Oakland | $223.91 |

III

| Date | Description | Amount |
|------|-------------|--------|
| 2/13/2012 | Taxi for Mr. Fitzgerald to SFO for trip to Ohio for depositions of Edward Hunter, Chris Resweber, Julie Gerbick, Kelly Crouse, and Steve Oakland | $100.00 |
| 2/17/2012 | Taxi for Mr. Fitzgerald from SFO home after depositions of Edward Hunter, Chris Resweber, Julie Gerbick, Kelly Crouse, and Steve Oakland | $120.00 |
| 3/26/2012 | Transcript and Exhibits for deposition of J. Edward Hunter and Christopher Resweber | $2,819.70 |
| 3/26/2012 | Transcript and Exhibits for deposition of Julie Gerbick | $1,662.50 |
| 3/26/2012 | Transcript for deposition of Kelly Crouse | $1,504.26 |
| 3/26/2012 | Transcript and Exhibits for deposition of Steven Oakland | $1,187.74 |
| 4/4/2012 | Transcript from deposition of Dr. Nathan Wong | $1,343.97 |
| | **Total:** | **$21,873.46** |

(2)   <u>Expenses Reasonably Necessary to Prosecute Action (Cal. Civ. P. Code § 1033.5(c))</u>

| Date | Description | Amount |
|------|-------------|--------|
| 08/15/11 | Expert Witness Fee (Dr. Nathan Wong) | $5,600.00 |
| 11/28/2011 | Mr. Fitzgerald's roundtrip transportation between Santa Clara and San Francisco Airport for trip to Los Angeles for in person meet and confer with Smucker's counsel regarding Plaintiff's Motion for Class Certification and damages | $141.00 |
| 11/28/2011 | Coach airfare for Mr. Fitzgerald's flight from SFO to LAX for in person meet and confer with Smucker's counsel regarding Plaintiff's Motion for Class Certification and damages | $177.70 |

IV

| Date | Description | Amount |
|------|-------------|--------|
| 2/22/2012 | Roundtrip, coach airfare for Mr. Fitzgerald's trip to Los Angeles for Settlement Conference | $157.60 |
| 1/4/2013 | Expert Witness fee for Dr. Wong's deposition | $5,950.00 |
| 2010 | FedEx charges for chambers copies (combined total) | $101.76 |
| 2011 | FedEx charges for chambers copies and discovery (combined total) | $219.67 |
| 2012 | FedEx charges for chambers copies (combined total) | $135.68 |
| 2011 | Mileage, parking, and tolls (combined total) | $366.28 |
| 2012 | Mileage, parking, and tolls (combined total) | $415.50 |
| | **Total:** | **$13,265.19** |