1  Neal R. Marder (SBN: 126879)
   nmarder@winston.com
2  Micol O. Sordina (SBN: 245659)
   msordina@winston.com
3  Jason C. Hamilton (SBN: 267968)
   jhamilton@winston.com
4  **Winston & Strawn LLP**
   333 S. Grand Avenue, 38th Floor
5  Los Angeles, CA 90071-1543
   Telephone:  (213) 615-1700
6  Facsimile:   (213) 615-1750

7  Ronald Y. Rothstein (*pro hac vice*)
   rrothstein@winston.com
8  **Winston & Strawn LLP**
   35 West Wacker Drive
9  Chicago, IL 60601-9703
   Telephone:  (312) 558-5600
10 Facsimile:   (312) 558-5700

11 Attorneys for Defendant
   THE J.M. SMUCKER COMPANY

12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

16

17 MARY HENDERSON, on behalf of        )  Case No. 2:10-CV-04524 GHK (VBKx)
   herself and all others similarly situated,  )  Pleading Type: Class Action
18                                      )
                Plaintiff,              )  **DEFENDANT THE J.M. SMUCKER**
19                                      )  **COMPANY'S OPPOSITION TO**
          v.                            )  **PLAINTIFF'S MOTION FOR**
20                                      )  **ATTORNEYS' FEES AND COSTS**
   THE J.M. SMUCKER COMPANY,            )
21                                      )  **[REDACTED VERSION]**
                Defendant.             )
22                                      )  Hearing Date: February 25, 2013
                                        )  Time: 9:30 a.m.
23                                      )  Courtroom: 650
                                        )  Judge: Hon. George H. King
24                                      )  Action Filed: June 18, 2010
                                        )
25                                      )
                                        )
26                                      )
                                        )
27 ─────────────────────────────────────)

28

*(Left margin, vertical text:* Winston & Strawn LLP / 333 S. Grand Avenue / Los Angeles, CA 90071-1543*)*

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ........................................................................................... 1

FACTS ............................................................................................................. 2

   I.     BACKGROUND OF CASE ............................................................. 2

   II.    PLAINTIFF MISREPRESENTS THE FACTS ............................... 4

ARGUMENT .................................................................................................... 9

   I.     PLAINTIFF LACKS STANDING TO BRING THIS MOTION ............. 9

   II.    PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES ............... 12

       A.   Plaintiff Is Not A "Successful" Party Under PAGA § 1021.5 ...... 12

          1.   Plaintiff's Lawsuit Was Not A Catalyst Any Changes ....... 14

          2.   Plaintiff Cannot Meet The Other Requirements Of § 1021.5 ................................................................................ 18

       B.   Plaintiff Is Not Entitled To Attorneys' Fees Under The CLRA ........................................................................................ 21

          1.   Plaintiff Waived Her Right To CLRA Damages ................ 21

          2.   Plaintiff Does Not Meet The Requirements Of § 1780(e) ...................................................................................... 21

   III.   PLAINTIFF'S $3.3 MILLION FEE REQUEST IS UNREASONABLE ...................................................................... 22

       A.   Plaintiff's Fee Request Is Entirely Unreasonable ........................... 23

       B.   Plaintiff Is Not Entitled To A Lodestar Multiplier ........................ 23

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

1

**TABLE OF AUTHORITIES**

2

Page(s)

3   CASES

4   *Anderson v. Long Beach City,*
5       81 Fed. Appx. 703 (9th Cir. 2003)..................................................23

6   *Arnold v. Cal. Exposition and State Fair,*
7       125 Cal. App. 4th 498 (2004) ......................................................18

8   *by Cortez v. Purolator Air Filtration Products Co.,*
9       23 Cal. 4th 163 (Cal. 2000)..........................................................11

10  *Cal. Serv. Station etc. Assn. v. Union Oil Co.,*
        232 Cal. App. 3d 44 (1991) ..........................................................11

11
12  *Californians for Population Stabilization v. Hewlett-Packard Co.,*
        58 Cal. App. 4th 273 (1997) ........................................................11

13
14  *Chacannaca v. Quaker Oats Co.,*
        752 F. Supp. 2d 1111 (N.D. Cal. 2010) .......................................17

15
16  *Charlebois v. Angels Baseball LP,*
        2012 U.S. Dist. LEXIS 91069 (C.D. Cal. May 30, 2012)...............22

17  *Churchill Village, LLC v. Gen. Elec.,*
18      361 F.3d 566 (9th Cir. 2004) .......................................................12

19  *Colgan v. Leatherman Tool Group, Inc.,*
        135 Cal. App. 4th 663 (2006) ......................................................19

20
21  *Community for Independent Living, Inc. v. Obledo,*
        33 Cal. 3d 348 (1983) ..................................................................16

22
23  *Cornelius v. Los Angeles County etc. Authority,*
        49 Cal. App. 4th 1761 (1996) ......................................................11

24
25  *Cruz ex rel. Cruz v. Alhambra School Dist.,*
        601 F. Supp. 2d 1183 (C.D. Cal. 2009)...................................23, 24

26
27  *Exhibitors' Serv., Inc. v. Am. Multi-Cinema, Inc.,*
        788 F.2d 574 (9th Cir. 1986) .......................................................11

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ii

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

*Goodman v. Lozano,*
    47 Cal. 4th 1327 (2010) .................................................................22

*Graciano v. Robinson Ford Sales, Inc.,*
    144 Cal. App. 4th 140 (2006) ....................................................21, 22

*Graham v. DaimlerChrysler Corp.,*
    34 Cal. 4th 553 (2004) ..........................................................passim

*Haley v. Dow Lewis Motors, Inc.,*
    72 Cal. App. 4th 497 (1999) .......................................................10

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ...................................................................23

*Hicks v. Evans,*
    No. C 08-1146 SI ......................................................................17

*Hogar v. Community Dev. Com. Of City of Escondido,*
    157 Cal. App. 4th 1358 (2007) ...................................................15

*In re IndyMac Bancorp, Inc.,*
    2012 WL 1037481 (Bkrtcy. C.D. Cal. 2012) ...............................10

*Karuk Tribe of Northern Cal. V. Cal. Regional Water Quality Control Bd., N. Coast Region,*
    183 Cal. App. 4th 330 (2010) ....................................................13

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) .........................................................24, 25

*Kim v. Euromotors West/The Auto Gallery,*
    149 Cal. App. 4th 170 (2007) ..................................................11, 21

*Kona Enterprises, Inc. v. Estate of Bishop,*
    229 F.3d 877 (9th Cir. 2000) .....................................................11

*Lieserson v. City of San Diego,*
    202 Cal. App. 3d 725 (1988) .....................................................14

*Lopez v. San Francisco Unified Sch. Dist.,*
    385 F. Supp. 2d 981 (N.D. Cal. 2005) .........................................24

*Lyons v. Chinese Hosp. Ass'n,*
    136 Cal. App. 4th 1331 (2006) ...............................................20, 22

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iii

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

*MacKay v. Pfeil,*
  827 F.2d 540 (9th Cir. 1987) .................................................................... 11

*Mandicino v. Maggard,*
  210 Cal. App. 3d 1413 (1989) .................................................................. 14

*Mann v. Quality Old Time Serv., Inc.,*
  139 Cal. App. 4th 328 (2006) ................................................................... 23

*Marine Forests Soc. v. Cal. Coastal Com.,*
  160 Cal. App. 4th 867 (2008) ................................................................... 14

*Mitchell v. Skyline Homes,*
  No. 2:09-cv-02241-CKD, 2012 WL 602907 (E.D. Cal. Feb. 23, 2012) ............ 17

*Narouz v. Charter Communications, LLC,*
  591 F.3d 1261 (9th Cir. 2010) .................................................................. 10

*Parkinson v. Hyundai Motor Am.,*
  796 F. Supp. 1160 (C.D. Cal. 2010) .......................................................... 22

*Perdue v. Kenny A. ex rel. Winn,*
  130 S.Ct. 1662 (2010) .............................................................................. 23

*Perez v. Safety-Kleen Sys., Inc.,*
  448 Fed. Appx. 707 (9th Cir. 2011) ........................................................... 24

*Schmier v. Supreme Court,*
  96 Cal. App. 4th 873 (2002) ............................................................... 14, 19

*Serrano v. Priest,*
  20 Cal. 3d 25 (1977) .......................................................................... 23, 25

*Sullivan v. Pa. Dep't. of Labor, etc.,*
  663 F.2d 443 (3d Cir. 1981) ...................................................................... 22

*Suter v. City of Lafayette,*
  57 Cal. App. 4th 1109 (1997) ................................................................... 16

*Tipton-Whittingham v. City of Los Angeles,*
  34 Cal. 4th 604 (2004) ............................................................................. 14

*Toms v. Allied Bond & Collection Agency, Inc.,*
  179 F.3d 103 (4th Cir. 1999) .................................................................... 10

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

*Vang Chanthavong v. Aurora Loan Services, Inc.*,
  448 B.R. 789 (E.D. Cal. 2011) ........................................................... 10

*Vinson, et al. v. The J. M. Smucker Co.*,
  No. CV12-04936 ................................................................................. 3

*Wohlgemuth v. Caterpillar Inc.*,
  207 Cal. App. 4th 1252 (2012) ........................................................ 22

*Zamani v. Carnes*,
  481 F.3d 990 (9th Cir. 2007) ........................................................... 17


STATUTES

Cal. Civ. Code § 1780(e) ............................................................... 11, 21

Cal. Civ. Code § 1870(e) ...................................................................... 1

Cal. Code Civ. P. § 1021.5 ............................................................ passim


OTHER AUTHORITIES

Rule 12(b)(6) ....................................................................................... 17

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

# INTRODUCTION

Plaintiff Mary Henderson's ("Plaintiff") and her counsel's hubris in requesting attorneys' fees and costs in this case is astonishing. Plaintiff is essentially requesting that the Court reward her counsel for filing an entirely frivolous suit on behalf of a Plaintiff who never had standing to bring suit in the first place. Plaintiff's and her counsel's outlandish fees request of nearly $3.3 million should be denied.

As the Court will recall, on October 23, 2012, the Court dismissed Plaintiff's claims in their entirety because Plaintiff lacked standing to pursue her claims against Smucker. *See* Dkt. 219. Despite this unequivocal ruling, Plaintiff and her counsel contend that she was a "successful" and/or "prevailing" party pursuant to California's Private Attorney General Statute ("PAGA"), Cal. Code Civ. P. § 1021.5 and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1870(e). In support of their motion, Plaintiff and her counsel argue that the instant suit was the "catalyst" that caused Smucker to change the packaging of its Uncrustables and Crisco products as well as remove Partially Hydrogenated Vegetable Oil ("PHVO") from the bread in Uncrustables. Plaintiff's theory could not be further from the truth.

Without even addressing the merits—or lack thereof—of Plaintiff's request, Plaintiff and her counsel have no right to bring the instant motion. As this Court has recognized, Plaintiff conferred *all* interest in this action, including "all remedies available under her claims" to her bankruptcy trustee. Dkt. 219 at 3-4. The trustee, in turn, sold Plaintiff's interest in this action to The J.M. Smucker Company ("Smucker"). *See* Request for Judicial Notice ("RJN"), Ex. A. In so doing, the trustee agreed to release and waive "any and all claims, obligations, demands, liabilities, rights, judgments and causes of action [Plaintiff's] estate now owns or holds … whether known or unknown, fixed or contingent, against Smucker … arising from or relating in any way to the Class Action Case [*i.e.* the instant action]." *Id.* at 13. Thus, Plaintiff voluntarily conferred any right she may have to attorneys' fees in this case.

Compounding this problem, Plaintiff's lawsuit was not the catalyst for any

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

changes to the products at issue in this case. The documents and deposition testimony speak for themselves: Smucker was engineering a reformulation of the bread in Uncrustables and re-designs of the Uncrustables and Crisco packaging long before this suit was filed. Plaintiff's mischaracterization of the documents in this case is disingenuous at best, and, at worst, sanctionable.

Plaintiff's request for fees insults the judicial process. The claimed fees were entirely avoidable had Plaintiff's counsel done even the minimum due diligence on their named plaintiff. Thus, the fees were incurred in spite of Plaintiff's counsel, *not* because of the feigned triumph half-heartedly asserted in the Fees Motion. Smucker respectfully requests that Plaintiff's and her counsel's motion be denied.

## FACTS

### I.   BACKGROUND OF CASE

On June 18, 2010, Plaintiff filed this action against Smucker on behalf of a putative class of individuals who purchased Smucker's Uncrustables Sandwiches and Crisco All-Vegetable Shortening products (together, the "Smucker Products"). Dkt. 1. A First Amended Complaint ("FAC") was filed on August 12, 2010. Dkt. 4. Smucker was served with the Summons and Complaint on September 23, 2010. Dkt. 11. The FAC alleged that the packaging of the Smucker Products misleads customers in violation of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and CLRA. Specifically, Plaintiff alleged that the presence of PHVO, trace amounts of *trans* fat, and high fructose corn syrup ("HFCS") in the Smucker Products rendered the following <u>eight</u> statements on the Products' packaging false and misleading: (1) "50% less saturated fat than butter," (2) "All-Vegetable," (3) "Use instead of butter or margarine for baking," (4) a "saturated fat comparison chart," (5) "Whole Grain," (6) "Whole Wheat," (7) "Wholesome," and (8) the "homemade goodness of PB&J" (collectively, the "Challenged Claims"). Dkt. 4 at ¶¶ 64-67.

On September 12, 2011, Plaintiff moved to certify a class of "All persons … who purchased [the Smucker Products] on or after January 1, 2000 in the United

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

States." Dkt. 66 at 2.[1] In response, Smucker argued, among other things, that Plaintiff was judicially estopped from serving as class representative because she filed the instant suit while she had a personal bankruptcy petition pending, yet never listed this case as an asset on her petition. Dkt. 85 at 10.

In an effort to cure her omission, on December 20, 2011, Plaintiff petitioned the Bankruptcy Court to re-open her bankruptcy case in order to list her contingent interest in this case as a prepetition asset. RJN, Ex. B. Plaintiff transferred her entire interest in this lawsuit to the bankruptcy estate after her bankruptcy case was re-opened on January 20, 2012. RJN, Ex. C. As a result of the re-opening of Plaintiff's bankruptcy petition, on March 27, 2012, the Court issued an order vacating Plaintiff's motion for class certification (the "March 27 Order"). Dkt. 186.

Subsequently, the bankruptcy trustee and Smucker reached an agreement whereby Smucker purchased the "[bankruptcy] estate's interest in the [instant lawsuit]." RJN, Ex. A at 13.[2] Pursuant to the purchase agreement, the bankruptcy trustee released and waived "*any and all* claims, obligations, demands, liabilities, rights, judgments and causes of action [Plaintiff's bankruptcy estate] now owns or holds ... whether known or unknown, fixed or contingent, against Smucker .... *arising from or relating in any way to the [instant litigation]*." *Id.* (emphasis added).[3]

As a result of the foregoing, on October 23, 2012, this Court ruled that Plaintiff "has no standing to proceed in this case," and dismissed Plaintiff's claims. Dkt. 219 (the "October 23 Order") at 6. In so doing, the Court rejected Plaintiff's arguments

---

[1] Plaintiff later amended the class definition to include only California purchasers of the Smucker Products. Dkt. 110 at 2.
[2] Plaintiff's Fee Motion mischaracterizes the purchase agreement. Though titled a "settlement agreement," the agreement states, in no uncertain terms, that "Smucker shall pay to the Trustee, on behalf of [Plaintiff's] bankruptcy estate, the amount of US$22,500.00 ... in exchange for the [Plaintiff's] Estate's interest in the [instant lawsuit]." RJN, Ex. A at 13. Thus, Smucker did not "settle" Plaintiff's claims with the bankruptcy estate in the common sense of the term; it purchased all right, title and interest in Plaintiff's claims from the bankruptcy estate. For Plaintiff to argue that the lawsuit resulted in the "success" of a "net monetary recovery of $22,500" is false.
[3] Understanding that Plaintiff's claims in this case were doomed due to her lack of standing. On June 6, 2012, Plaintiff's counsel recruited two new plaintiffs and filed a nearly-identical suit against Smucker on their behalf. *See Vinson, et al. v. The J. M. Smucker Co.*, No. CV12-04936. That case is currently pending before this Court.

3

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  that she maintained any interest in this suit, noting that "Plaintiff scheduled her claims

2  in this class action to include all remedies available to her under her claims … as well

3  as all her rights contingent upon her status as the putative class representative." *Id.* at

4  3-4. The Court further recognized that "once a class action plaintiff's claims become

5  part of the bankruptcy estate, she no longer has standing to prosecute the action…,"

6  including the pursuit of any remedy that is "contingent upon the claim." *Id.* at 4.

7         Plaintiff's putative class was never certified, and, on December 17, 2012, after

8  Plaintiff's counsel effectively abandoned this case in reliance on the Court's October

9  23 Order, Smucker moved this Court to dismiss the case in its entirety and close the

10  action. Dkt. 223. This motion is currently pending before this Court.

11  ## II.   PLAINTIFF MISREPRESENTS THE FACTS

12         Despite the fact that the Court dismissed Plaintiff's claims for lack of standing,

13  and thereby extinguished Plaintiff's pursuit of any remedy that is "contingent upon her

14  claim" (Dkt. 219 at 4), Plaintiff and her counsel still seek to recover attorneys' fees

15  and costs. Plaintiff's motion is based on the faulty theory that she somehow

16  "succeeded" and/or "prevailed" in this case because Smucker removed three of the

17  eight Challenged Claims from the labels of its Products during the pendency of this

18  suit and reformulated the bread used in Uncrustables to remove PHVO. Fees Mot. at

19  3, 4. In this regard, Plaintiff would have the Court believe that simply because

20  Smucker removed certain claims from the Products after the lawsuit was filed, the

21  removal was caused by Plaintiff's lawsuit and they should be rewarded with a king's

22  ransom. As demonstrated below, regardless of the utterly baseless nature of their

23  massive attorneys' fee request, the evidence in this case is to the contrary.

24  ### A.   Smucker Had Been Working To Remove *Trans* Fat From Its

25  ### Products Prior To And Independent of Plaintiff's Lawsuit

26         Plaintiff's Fees Motion argues without any evidentiary basis that Smucker

27  "remove[d] [] trans fat from Uncrustables" as a result of Plaintiff's lawsuit. Fees Mot.

28  at 3. In reality, the evidence and testimony do not support Plaintiff's contention that

4

1  Smucker reformulated the bread in Uncrustables in reaction to her lawsuit. Indeed, the

2  evidence shows just the opposite.

3  　　　Smucker has long been committed to the reduction, and/or removal, of PHVO,

4  and, in turn, *trans* fat from its products. ████████████████████████████

5  ███████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████

7  ██████████████████████ *See* Decl. of Micol O. Sordina ("Sordina Decl."), Exs. A

8  (SMKR00061799-800); B (SMKR00061810); C (SMKR00042259-91); D

9  (SMKR00053131-33); E (SMKR00042422-24). ████████████████████

10 ██████████████████████████████████

11

12

13 ████████████████████████████████

14

15

16 *Id.*, Ex. F (SMKR00053993). These efforts have not ended.

17 　　　Wholly independent of this lawsuit, and *prior to it*, Smucker has strived to

18 remove PHVO from its products. *See, e.g. Id.*, Exs. G (Crouse Dep. Tr. 44:17-25,

19 61:12-25); H (Wagstaff Dep. Tr. 54:5-55:18, 54:20-55:18, 90:17-91:1). These efforts

20 are motivated by marketplace demands. *Id.* ████████████████████████

21 █████████████████████████████████████████████████████

22 ██████████ *See, e.g. Id.*, Exs. G (Crouse Dep. 47:5-9, 48:23-50:4); H (Wagstaff

23 Dep. 180:12-181:6); I (SMKR00017748-50); *See also* Declaration of Karen Milley

24 ("Milley Decl.") ¶ 3-4, 9, 11. Consistent with these goals, Smucker has continued to

25 research and develop formulations of its products that will further reduce or eliminate

26 *trans* fats. *See, e.g.* Sordina Decl., Exs. E (SMKR00042422-24); J (SMKR00029343);

27 K (SMKR00042690); Milley Decl. ¶ 9.

28 　　　Indeed, the removal of PHVO from the bread in Uncrustables had nothing to do

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

5

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

1   with this lawsuit. *See* Milley Decl. ¶ 11. Instead, it was part of Smucker's general

2   goal, discussed above, of reducing or removing *trans* fat from its products. *Id.* ¶¶ 4,

3   11. Specifically, the removal of PHVO from the bread in Uncrustables was driven by

4   a number of considerations, none of which bear any relation to this lawsuit. █████

5   ███████████████████████████████████████████████████ Sordina

6   Decl., Ex. L (SMKR00042393). Moreover, Smucker's removal of PHVO from the

7   bread in Uncrustables was in response to a marketplace demands.  Milley Decl. ¶ 4.

8   ████████████████████████████████████████████████████████████

9   ████████████ *Id.* ¶ 5. ███████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  *Id.*, Ex. A. ███████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ██████████████████████████████████████ *Id.*, Exs. B-D.

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  *Id.* ¶ 6, Ex. E. ████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ██████ *Id.* ¶ 7, Ex. F. ████████████████████████████

25  ████████████████████████████ *Id.* ████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████ *Id.* ¶ 8, Ex. G. █████████████

28   Thus, in response to these marketplace demands, Smucker ultimately identified



Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

1   a formulation for the bread used in Uncrustables that would allow for the removal of

2   PHVO. *Id.* ¶¶ 9-10. ████████████████████████████████████████████

3   ████████████████████████████████████████████████  *Id.* ¶ 10.

4   Accordingly, despite Plaintiff's contention to the contrary, the evidence establishes

5   that Smucker did not remove PHVO from the bread in Uncrustables as a result of this,

6   or any other, lawsuit.

**B.      Smucker Was In The Process Of Removing The Bar Chart From The Crisco Products Prior To And Independent Of Plaintiff's Lawsuit**

9       As discussed above, the FAC challenges the statement "50% less saturated fat

10  than butter" and a representation of that statement—in the form of a bar chart—on the

11  packaging of the Crisco Products. Dkt. 4 at ¶¶ 64-67. Plaintiff's Fees Motion attempts

12  to create a causal connection between the removal of the bar chart from the packaging

13  of the Crisco products and Plaintiff's lawsuit. Fees Mot. 2, 4. But the evidence and

14  testimony, once again, establish just the opposite.

15      Plainly, the removal of the bar chart from Crisco did not "have anything to do

16  with this lawsuit." Sordina Decl., Ex. G (Crouse Dep. Tr. 164:14-16). ████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████  *Id.*, Exs. G (Crouse Dep. 160:12-161:11, 165:17-166:11); M

20  (SMKR00023297-386); N (SMKR00075083-84). ████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████  *Id.*, Ex. G (Crouse Dep.

23  Tr. 163:12-164:13). ████████████████████████████████████████████

24  ████████████████████████████████████  *Id.*, Exs. G (Crouse

25  Dep. 166:5-11); M (SMKR00023297-386). █████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████  *Id.*, Ex. O (SMKR00054722-23.)

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Accordingly, the evidence establishes that Smucker did not remove the bar chart from the label for Crisco as a reaction to Plaintiff's lawsuit. Instead, it was done based on a package redesign and was initiated *prior to* Plaintiff's lawsuit.

### C.   Smucker Was In The Process Of Removing The Wholesome Language Prior To And Independent Of Plaintiff's Lawsuit

Plaintiff argues that her lawsuit prompted Smucker to remove the words "wholesome" and "homemade goodness" (together, the "Wholesome Language") from a paragraph on the back label of the Uncrustables' packaging and from Smucker's website. Fees Mot. at 2. Plaintiff grossly misrepresents the contents of the documents it cites in support of this argument. For example, Plaintiff references SMKR00072408 (Dkt. 229 (Weston Decl.), Ex. 2) to argue that Smucker removed the word "wholesome" from its website ████████████████████████████████████ ████████████████████████████████████████████████ Plaintiff's misrepresentation of this document as an affirmative representation regarding what Smucker did is nothing more than an attempt to mislead the Court. On the contrary, the evidence and testimony in this lawsuit prove only that the removal of the Wholesome Language from the packaging of Uncrustables had absolutely nothing to do with Plaintiff's suit.

Indeed, the team members involved in making the decision to remove the Wholesome Language from the label of Uncrustables were not even aware of Plaintiff's suit when the decision was made. Sordina Decl., Ex. P (Gerbick Dep. Tr. 33:9-14.) Those team members unequivocally testified that the decision to remove the Wholesome Language from Uncrustables was not "in any part motivated by this lawsuit." *Id.*, Ex. P (Gerbick Dep. Tr. 32:7-33:5); Q (Stanziano Dep. Tr. 108:9-109:2.) Instead, ████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ *Id.*, Ex. P (Gerbick Dep. 31:23-32:17). During the packaging change Smucker

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

1   eliminated the Wholesome Language because ██████████████████████

2   ████████████████████████████████████████

3   ██████████████████████  *Id.*, Ex. Q (Stanziano Dep. Tr. 106:25-108:8).

4   The documentary evidence confirms this testimony. ████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████  *Id.*, Exs. R ( SMKR00054747); S

8   (SMKR00054780); T (SMKR00059107); U (SMKR00059110); V (SMKR00059114).

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ██████████████  *Id.*, Exs. W (SMKR00059108); X (SMKR00059109); Dkt. 11.

12  These labels also did not include the Wholesome Language.

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████  *Id.* ██████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ██████████████████████  *Id.*, Ex. Y (SMKR00035854; *see also, e.g., Id.*, Ex. Z

18  (SMKR00038935)████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20   Thus, despite Plaintiff's desperate contentions to the contrary, Smucker did not

21  remove the Wholesome Language from the packaging of Uncrustables in reaction to

22  Plaintiff's suit. Instead, the package re-design began long before this suit was filed as

23  a result of a multitude of factors totally unrelated to the present lawsuit.

**ARGUMENT**

## I.   PLAINTIFF LACKS STANDING TO BRING THIS MOTION

26   Plaintiff's Fees Motion deliberately omits a critical fact: this Court dismissed

27  Plaintiff and her claims for lack of standing. As such, Plaintiff is no longer a "party"

28  to this action, and her lack of standing in this case prevents her from claiming any

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  right to attorney fees under California law.

2      It is black letter law that a party must hold a concrete interest in the litigation to

3  invoke the jurisdiction of the court. *Toms v. Allied Bond & Collection Agency, Inc.*,

4  179 F.3d 103, 105 (4th Cir. 1999); *see also Narouz v. Charter Communications, LLC*,

5  591 F.3d 1261, 1264-65 (9th Cir. 2010). If a plaintiff loses that interest, the case

6  becomes moot. *Id.* Plaintiff and her attorneys voluntarily conceded all right, title and

7  interest in this suit to the bankruptcy trustee when she reopened her bankruptcy case.

8  Accordingly, neither she nor her attorneys are entitled to attorneys' fees.

9      As discussed above, in its October 23 Order, this Court dismissed Plaintiff's

10  claims in this case for lack of standing. Dkt. 219 at 6. In so doing, the Court rejected

11  Plaintiff's arguments that she maintained any contingent interest in this suit, noting

12  that "Plaintiff scheduled her claims in this class action to include all remedies

13  available to her under her claims … as well as all her rights contingent upon her status

14  as the putative class representative." *Id.* at 3-4. The Court further recognized that

15  "once a class action plaintiff's claims become part of the bankruptcy estate, she no

16  longer has standing to prosecute the action…," including the pursuit of any remedy

17  that is "contingent upon the claim." *Id.* at 4. For this reason alone Plaintiff *and* her

18  counsel cannot possess any interest in seeking attorneys' fees. *Vang Chanthavong v.*

19  *Aurora Loan Services, Inc.*, 448 B.R. 789, 797 (E.D. Cal. 2011); *Haley v. Dow Lewis*

20  *Motors, Inc.*, 72 Cal. App. 4th 497, 503-04 (1999); *see also In re IndyMac Bancorp,*

21  *Inc.*, 2012 WL 1037481, *12 (Bkrtcy. C.D. Cal. 2012) (finding that estate property

22  includes all of a debtor's rights and expectancies, including "every conceivable

23  interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,"

24  and noting that this concept "has been construed most generously"). Moreover, the

25  *trustee* released and waived "*any and all* claims, obligations, demands, liabilities,

26  rights, judgments and causes of action [Plaintiff's bankruptcy estate] now owns or

27  holds … whether known or unknown, fixed or contingent, against Smucker … *arising*

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

10

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

*from or relating in any way to the [instant litigation]."*[4] RJN, Ex. A at 13. Plaintiff,
her counsel, and the trustee have already relinquished all right to prosecute this action,
including any claim for attorneys' fees.

Indeed, California courts have repeatedly refused to award attorneys' fees to a
party that lacks standing under the relevant statutory scheme. *Californians for
Population Stabilization v. Hewlett-Packard Co.*, 58 Cal. App. 4th 273, 296 (1997)
("It is illogical to claim that a party is entitled to attorneys' fees pursuant to a statutory
scheme wherein it has no standing to bring an action") (*overruled on other grounds by
Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 173-175 (Cal.
2000)); *Cornelius v. Los Angeles County etc. Authority*, 49 Cal. App. 4th 1761, 1779-
80 (1996) (reversing an award of attorney fees to plaintiff after finding plaintiff lacked
standing to pursue his challenge); *Cal. Serv. Station etc. Assn. v. Union Oil Co.*, 232
Cal. App. 3d 44, 58-59 (1991) (reversing an award of attorney fees because the
requesting party neither alleged nor proved that it sustained injury as required by the
relevant statutory scheme, and thus had no standing); *see also Exhibitors' Serv., Inc. v.
Am. Multi-Cinema, Inc.*, 788 F.2d 574, 581 (9th Cir. 1986) (concluding plaintiff
lacked standing, dismissing the action, and stating that "[i]t follows that we also
vacate the award of attorneys' fees and costs to plaintiffs").[5]

These cases demonstrate the absurdity of awarding nearly $3.3 million in
attorneys' fees to Plaintiff's attorneys, when she and her attorneys had no right to
bring this action in the first place.[6]

---

[4] In fact, the right to attorneys' fees arguably belongs to Smucker, as it is
unquestionably covered by this release language.
[5] In fact, the only cases where California courts have awarded attorneys' fees under
state law after a dismissal for lack of standing actually award such fees to the
*defendant. See, e.g., Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 887-88
(9th Cir. 2000) (further concluding that the defendant was the "prevailing party");
*MacKay v. Pfeil*, 827 F.2d 540, 542 n.3 (9th Cir. 1987). The cases cited by Plaintiff
are irrelevant as the "prevailing party" in each case had standing. *See, e.g., Kim v.
Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170 (2007).
[6] Moreover, Plaintiff's counsel does not have standing to bring this motion on their
own behalf. The CLRA mandates an award of costs and fees "to a *prevailing
plaintiff.*" Cal. Civ. Code § 1780(e) (emphasis added). PAGA only permits an award
of "attorneys' fees to a *successful party.*" Cal. Civ. Proc. Code § 1021.5 (emphasis
added). Thus, Plaintiff's counsel does not have standing to pursue fees on their own.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

## II.   PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES

Plaintiff is not entitled to attorneys' fees under either PAGA or the CLRA. To award Plaintiff attorneys' fees, this Court must conclude that Plaintiff is either a "prevailing" or "successful" party. But Plaintiff's Fees Motion does not come close to meeting this burden, instead contorting the applicable law and citing suspect statistics. Plaintiff's claim that she is a "successful party" is laughable given that this Court dismissed her claims in their entirety and ruled that she lacked standing to bring them in the first place. And Plaintiff's misrepresentation of the meaning of documents in this case to argue that this suit was the "catalyst" to Smucker's changed behavior is desperate at best. As discussed in Fact Section II above, Smucker made the decision to re-design its Product labels and remove PHVO from the bread in Uncrustables *prior to*—and, therefore, independent of—Plaintiff's suit. Furthermore, the "cost savings" and "health benefits" Plaintiff cites are entirely untested and inherently flawed assertions that lack any basis in relevant scientific evidence and literature reasonably relied upon by experts in this field. In particular, the Declaration of Nathan Wong contains nothing more than pure speculation that would never survive a *Daubert* motion and cannot be considered here.[7] Thus—notwithstanding Plaintiff's protestations to the contrary—the instant suit did not result in an "important right affecting the public interest," and it did not "confer a significant benefit … on the general public." Plaintiff's counsel failed to adequately vet their named plaintiff to ensure she had not committed fraud in bankruptcy, and they should not be compensated for time and money expended as a result of this failure. As such, Plaintiff is not entitled to recover fees under either PAGA or the CLRA.

### A.   Plaintiff Is Not A "Successful" Party Under PAGA § 1021.5

Only a "successful party" may collect attorneys' fees and costs under § 1021.5. "[I]n determining whether a party is successful, the court must critically analyze the

---

*See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 578-80 (9th Cir. 2004) (holding that attorneys lacked standing to pursue fee awards under Section 1021.5).
[7] Smucker served a deposition notice on Nathan Wong, but Plaintiff's counsel refused to produce him on the date scheduled.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    surrounding circumstances of the litigation and pragmatically assess the gains

2    achieved by the action." *Ebbetts Pass Forest Watch*, 187 Cal. App. 4th at 382. While

3    in some extraordinary circumstances "an attorney fee award may be justified even

4    when plaintiff's legal action does not result in a favorable judgment" (*Graham v.*

5    *DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004)), California courts recognize that

6    an opposing party should not "be forced to pay legal fees for a lawsuit that was not

7    justified in the first instance and found no validation in the last instance." *Ebbetts*

8    *Pass*, 187 Cal. App. 4th at 388. No such extraordinary circumstances exist here.

9        Plaintiff stretches the misguided argument that "a party need not prevail on

10   every claim to be considered a successful party within the meaning of the statute" to

11   the point of absurdity. Fees Mot. at 9 (citing *Grodensky v. Artichoke Joe's Casino*,

12   171 Cal. App. 4th 1399, 1437 (2009)). But Plaintiff here did not prevail on *any* of her

13   claims, and did not achieve any measure of success—Plaintiff has not received a

14   judgment in her favor, she has not made a favorable settlement,[8] she has not

15   succeeded on any substantive motion, and she relinquished all personal interest in the

16   case. Indeed, Plaintiff's substantive claims have never been found to have any merit.

17   Instead, they were dismissed for lack of standing. Dkt. 219 at 6. Above all, if Plaintiff

18   succeeded in this case, there would be no reason for her counsel to maintain two

19   virtually *identical* lawsuits with *identical* claims, one in state court and the other

20   before this *same* Court. *See* Dkt. 209.

21       California courts have repeatedly found a plaintiff was not a successful party

22   and refused attorneys' fees where the plaintiff failed to achieve any real measure of

23   success in the litigation. *See, e.g., Ebbetts Pass*, 187 Cal. App. 4th at 388 (plaintiff

24   environmental organizations were not "successful parties" in seeking a writ of

25   mandate challenging environmental agency's plans because the writ was denied and

26   they only achieved clarification of the law); *Karuk Tribe of Northern Cal. V. Cal.*

27   *Regional Water Quality Control Bd., N. Coast Region*, 183 Cal. App. 4th 330, 364-69

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[8] *See* Note 2, *supra*.

13

(2010) (plaintiff was not a successful party when it achieved a remand to an administrative agency on a previously decided matter because the remand produced nothing more than "an augmented explanation" of the prior decision); *Lieserson v. City of San Diego*, 202 Cal. App. 3d 725 (1988) (plaintiff was not a successful party because the fact that an appellate opinion clarified the applicable law was fortuitous); *Mandicino v. Maggard*, 210 Cal. App. 3d 1413, 1419 (1989) (plaintiffs were not successful parties when their lawsuit resulted in de minimis modifications to election ballot because the modifications ordered were minor editorial changes).

As such, Plaintiff cannot be a successful party within the meaning of the statute, and her claim for attorneys' fees and costs should be denied.

### 1.   Plaintiff's Lawsuit Was Not A Catalyst Any Changes

Plaintiff's claim for attorneys' fees as a "successful" party also fails to meet the standards Plaintiff cites regarding the "catalyst theory" of recovery. Under this theory, a plaintiff may only receive an award for attorney fees "if the defendant changes its behavior *substantially* because of, and in the manner sought by, the litigation." *Marine Forests Soc. v. Cal. Coastal Com.*, 160 Cal. App. 4th 867, 877 (2008) (emphasis added) (quoting *Graham*, 34 Cal. 4th at 560). To succeed under this theory, Plaintiff must show: "(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) the lawsuit had merit and achieved the catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . and (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004). Plaintiff cannot come close to meeting these requirements.

### a)   The Lawsuit Did Not Motivate Smucker To Change

As Plaintiff admits, for a lawsuit to be a "catalyst" under § 1021.5, the party seeking fees must establish a causal connection between the suit and the relief obtained. *Schmier v. Supreme Court*, 96 Cal. App. 4th 873, 878 (2002). In determining whether such a causal connection exists, courts look at: "(a) the situation

immediately prior to the commencement of the suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two." *Hogar v. Community Dev. Com. Of City of Escondido*, 157 Cal. App. 4th 1358, 1366 (2007). Moreover, when examining why a defendant changes its behavior, the California Supreme Court has explained that "the defendant in such cases knows better than anyone why it made the decision that granted the plaintiff the relief sought, and the defendant is in the best position to either concede that the plaintiff catalyst or to document why the plaintiff was not." *Graham*, 34 Cal .4th at 573.

Plaintiff claims the lawsuit was a catalyst because, "when Smucker removed trans fat from Uncrustables, 'wholesome' and 'homemade goodness' claims from Uncrustables' packaging and website, and the saturated fat comparison chart from Crisco's packaging, Plaintiff obtained many of her precise demands."[9] Fees Mot. at 11. In essence, Plaintiff's theory is that, because some of the changes implemented by Smucker occurred after the filing of the suit, they were *ipso facto* caused by the suit. Plaintiff's position not only lacks logic, but is also belied by the evidence in this case.

As discussed in detail in Fact Section II above, the documentary and testimonial evidence proves that Smucker's decision to change its product labels and reformulate Uncrustables had absolutely nothing to do with the filing of this suit. And, it should be pointed out that these decisions are not binding on Smucker and that it remains free to reintroduce these claims and to return to the old formulation of Uncrustables should the product not perform in the marketplace.

Nonetheless, with respect to the removal of PHVO from the bread in Uncrustables, the evidence shows that Smucker has long been committed to the reduction, and/or removal, of PHVO, and, in turn, *trans* fat from *all* its products, long before the filing of this suit. Milley Decl. ¶¶ 3, 9. ███████████████

███████████████████████████████████████████████

████████████████ ¶ 9. ████████████████████

---

[9] Though Smucker removed the "saturated fat comparison" chart, it did not remove the statement to which it refers—i.e. "50% less saturated fat."

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

[text redacted] *See Id.* ¶¶ 4-9 and attached documents. Likewise, Smucker removed the Wholesome Language (buried in a paragraph on the back of the Uncrustables label) so that [redacted] Sordina Decl., Exs. P-Z. The outside vendors and employees involved in this process were not even aware of this lawsuit [redacted] *Id.*[10]   Lastly, Smucker removed the bar chart from Crisco during a product redesign that began *prior to* Plaintiff's filing of her lawsuit [redacted] *Id.*, Exs. G, M-N. Significantly, [redacted] *Id.*, ¶ O.

California courts routinely deny fees requests where, as here, the evidence proves that factors other than the lawsuit caused the changed behavior. *See e.g. Suter v. City of Lafayette*, 57 Cal. App. 4th 1109, 1116, 1136-38 (1997) (denying motion for attorneys' fees because defendant provided evidence its actions were independent of, and predated, the lawsuit); *Community for Independent Living, Inc. v. Obledo*, 33 Cal.

---

[10] Plaintiff relies on a declaration submitted by Christopher Resweber for the proposition that Smucker "began the process" of removing "wholesome" from the packaging of Uncrustables in October, 2010 – after this suit was filed. Plaintiff's reliance on Mr. Resweber's statement is misplaced, as it assumes that the implementation of the re-design was not preceded by an eight-month process whereby Smucker considered *how* to re-design the product labels in response to retailer requests. The uncontroverted evidence in this case makes clear that Smucker [redacted] Thus, Mr. Resweber's declaration is entirely consistent with the timeline evidenced by the documents and deposition testimony in this case. Indeed, Mr. Resweber was not involved in the background research done regarding removal of the Wholesome Language from the Uncrustables Product packaging, and his statement that the re-design "began" in October 2010 reflects his knowledge regarding the actual implementation of the package redesign, which occurred later in the process. Sordina Decl., Ex. BB (Resweber Dep Tr. at 22:20-23:1; 29:10-30:7; 107:19-108:14).

16

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

3d 348, 354 (1983) (holding that attorney fees may not be awarded based on speculation that the lawsuit accelerated of the issuance of government regulations or remedial measures, when the process of issuing those regulations was ongoing at the time the litigation was filed); *Mitchell v. Skyline Homes*, No. 2:09-cv-02241-CKD, 2012 WL 602907, at *1 (E.D. Cal. Feb. 23, 2012) (denying fees request made by plaintiffs who had voluntarily dismissed their claims because documentary evidence indicated that defendant changed behavior was a result of factors other than litigation).

Accordingly, Plaintiff's motion for attorneys' fees and costs should be denied.

### b) Plaintiff Cannot Meet Her Burden Of Establishing Her Lawsuit Has Merit

Plaintiff is also unable to establish that this lawsuit had merit. Plaintiff argues that her lawsuit was meritorious for three reasons: (1) the Court denied Smucker's motion to dismiss; (2) "[s]ister district courts have found merit in similar claims;" and (3) Plaintiff's *draft* motion for summary judgment (Weston Decl. (Dkt. 229), Ex. 14)—which was never submitted to the Court—somehow "confirms that the claims were not frivolous, unreasonable or groundless." Each of these arguments is at best irrelevant and at worst, simply incorrect.

First, that this Court denied Smucker's motion to dismiss is irrelevant as to the merits of Plaintiff's case. *Zamani v. Carnes*, 481 F.3d 990, 996 (9th Cir. 2007) ("The relevant inquiry for a Rule 12(b)(6) motion is not whether the plaintiff has demonstrated a likelihood of success on the merits."); *Hicks v. Evans*, No. C 08-1146 SI (pr), 2012 WL 398821, at *9 (N.D. Cal. Feb. 7, 2012) ("The denial of the motion to dismiss says nothing about the merits of plaintiff's claims and only concerns the sufficiency of the pleading."). Similarly, Plaintiff's citation to the Northern District's decision in *Chacannaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1123-23 (N.D. Cal. 2010) misrepresents the procedural posture of that case. There, the court ruled on a defendant's motion for judgment on the pleadings, and therefore the decision was irrelevant as to the merits of the case. Such decisions test only the sufficiency of the pleadings and cannot mean that Plaintiff's suit was meritorious. Indeed, the California

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

17

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   Supreme Court expressly rejected such a standard for determining "merit" under the

2   catalyst theory in *Graham*: "[W]e see no reason to limit a trial court's inquiry

3   regarding the merits of a case to an examination of whether the pleadings state a cause

4   of action. . . . Attorney fees should not be awarded for a lawsuit that lacks merit, even

5   if its pleadings would survive a demurrer." *Graham*, 34 Cal .4th at 576. Lastly,

6   Plaintiff's reliance on her draft motion for summary judgment to support the argument

7   that her claims have merit is baseless. Plaintiff's draft motion proves absolutely

8   nothing. Indeed, Smucker could just as well point to its own draft motion for summary

9   judgment to argue just the opposite, but will not waste the Court's time.

10       One inescapable conclusion, however, is that Plaintiff's lawsuit *should have*

11   *never been filed due to her bankruptcy* and it thus lacks merit for that reason alone.

12   Plaintiff was in bankruptcy when she filed this suit and failed to report this contingent

13   interest to the bankruptcy trustee. In attempting to correct her fraud on the bankruptcy

14   court, in turn, she lost standing to pursue her action. Plaintiff defies logic by arguing

15   that her case was sufficiently meritorious to warrant more than $3 million in

16   attorneys' fees when she never had standing to bring it in the first place. And

17   Plaintiff's baseless assertions regarding *trans* fats proffered in the form of a flawed

18   scientific opinion provide no additional reason to find that this lawsuit has merit.  This

19   Court should not reward Plaintiff's unsound expert testimony, filed in a Fees Motion

20   after this case is effectively over.

21       **2.    Plaintiff Cannot Meet The Other Requirements Of § 1021.5**

22       Plaintiff's request for fees and costs also fails because she cannot meet each of

23   the following additional requirements of § 1021.5: (a) the action "has resulted in the

24   enforcement of an important right affecting the public interest," (b) a "significant

25   benefit. . . has been conferred on the general public or a large class of persons," and

26   (c) the necessity and financial burden of private enforcement . . . are such as to make

27   the award appropriate." Code Civ. Proc., § 1021.5; *see also Arnold v. Cal. Exposition*

28   *and State Fair*, 125 Cal. App. 4th 498, 510 (2004) ("A trial court may deny a section

1021.5 fee request if one of these three criteria is not met.").

### a) Plaintiff's Action Did Not Result In The Enforcement Of An Important Right Affecting The Public Interest

Plaintiff does not show how her lawsuit specifically resulted in the *enforcement* of an important right. It is undisputed that a party seeking fees under § 1021.5 "must satisfy *not only* section 1021.5's public benefit requirement but also its requirement of *enforcement* (or vindication) of an important right affecting the public interest." *Schmier*, 96 Cal. App. 4th at 881.  Plaintiff provides no explanation as to how her lawsuit in particular *enforced* an important public right.  Instead, she cites case law explaining how the rights conferred by California's consumer protection laws are important and affect the public interest. In fact, Plaintiff's counsel filed a virtually identical suit before this Court, seeking to enforce the *exact same* allegedly "important rights" Plaintiff describes here. *See* Dkt. 209. This in and of itself is evidence that this suit has not enforced "important rights affecting the public interest."

### b) No Significant Benefit Was Conferred On The General Public Or A Large Class Of Persons

Plaintiff claims that the lawsuit conferred a significant benefit on the general public because it caused Smucker to alter its alleged "health and wellness packaging," and "reduce trans fat in Uncrustables, thereby aiding in the prevention of coronary hear and a myriad of other diseases, saving American lives and dollars." In support, Plaintiff cites *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006). The trial court in *Colgan*, however, awarded attorneys' fees after conducting a trial on both liability and damages. *Id.* at 674. With respect to attorneys' fees, the *only* contested issue was whether the lawsuit conferred a significant benefit on the public or a large class of persons. *Id.* at 703. The defendant in *Colgan did not* contest the fact that it changed the labeling on its product as a result of the plaintiff's lawsuit. *Id.*

However, as discussed above, unlike in *Colgan*, Plaintiff has never received *any* judgment—much less a trial—on the merits of her case. Moreover, unlike in *Colgan*, the overwhelming evidence here defeats Plaintiff's contention that Smucker altered its

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

product labels or reformulated Uncrustables as a result of this lawsuit. It is axiomatic that because Plaintiff cannot show that her lawsuit caused a change in Smucker's behavior, she cannot claim that her lawsuit *caused* a significant benefit.

That aside, Plaintiff again recites the same untested claims regarding the affect of *trans* fats, that bear no relation to the consumption of Crisco Shortening on Uncrsutables, and launches into pure speculation with trumped up and wildly speculative statistics regarding *alleged* cost savings to human health. Plaintiff cites a flawed opinion in which one individual, who arguably lacks expertise in this field, claims inherently immeasurable benefits to human lives that are in no way attributable to Smucker's products. Her assertions must be rejected as unfounded.

### c) Private Enforcement Was Unnecessary And Does Not Warrant An Award Of Attorneys' Fees

"The private attorney general doctrine was not intended to reward litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1348 (2006) (internal citations and alterations omitted). Thus, in assessing attorneys' fees under § 1021.5, a court must determine whether private enforcement was not only necessary, but also whether the financial burden justifies subsidizing the party's attorneys.

Plaintiff's Fee Motion relies on *Keith v. Volpe* for the proposition that Plaintiff's suit was necessary because the FDA did not bring any enforcement actions against Smucker. Fees Mot. at 17. However, the court in *Keith* awarded the plaintiff attorneys' fees in a claim against the city after conducting a complete trial and determining that the city had in fact violated the law. 858 F.2d 467, 473 (1998). The court held it was necessary for the plaintiff to bring an action against the city personally because the city refused to protect resident's rights. *Id.* at 486.

Here, there has been no determination that Smucker violated any laws. Moreover, it was not *necessary* for the FDA to bring a lawsuit against Smucker because its advertising and labeling complies with all FDA regulations. Therefore, the financial burden caused by Plaintiff's unnecessary lawsuit does not justify the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

20

1   payment of attorneys' fees to Plaintiff's counsel.

2   **B.   Plaintiff Is Not Entitled To Attorneys' Fees Under The CLRA**

3   **1.   Plaintiff Waived Her Right To CLRA Damages**

4   Plaintiff has waived her claim for damages under the CLRA. On November 12,
5   2010, Smucker moved to dismiss the FAC. On March 17, 2010, this Court held that
6   Plaintiff did not satisfy the CLRA's notice requirement, and dismissed the CLRA
7   damages claim without prejudice. Dkt. 45 at 2. Thereafter, on May 27, 2011, the Court
8   entered a scheduling order requiring, inter alia, that "[a]ny stipulation or motion to
9   amend as to any claims, defenses and/or parties shall be lodged/filed by no later than
10  June 27, 2011, failing which it shall be deemed that party's waiver of any such
11  amendments in this action." Dkt. 55 at 1. Plaintiff never amended the FAC. As such
12  that claim has been waived and she cannot recover attorneys' fees under it.

13  **2.   Plaintiff Does Not Meet The Requirements Of § 1780(e)**

14  California Civil Code § 1780(e) provides that the court "shall award court costs
15  and attorneys' fees to a *prevailing plaintiff* in litigation filed pursuant to this section."
16  Cal. Civ. Code § 1780(e). The CLRA does not define the term "prevailing," *Graciano*
17  *v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150 (2006), and California courts
18  have adopted two approaches to determine when a plaintiff "prevails" such that she is
19  entitled to a fee award under the CLRA. Neither of these approaches is met here.

20  The first approach (cited by Plaintiff) focuses on whether the party obtained a
21  "net monetary recovery." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App.
22  4th 170, 179 (2007). Plaintiff argues that Smucker's payment of $22,500 to resolve
23  Ms. Henderson's claim satisfies the CLRA's standard of a "net monetary recovery."
24  However, as discussed above, this argument misleadingly transforms the purchase
25  agreement between Smucker and the bankruptcy into a settlement of Plaintiff's
26  underlying claims. Plaintiff attaches unnecessary importance to the title "Settlement
27  Agreement," when the document as a whole is clearly an asset purchase agreement. In
28  fact, the Agreement states, in no uncertain terms, that "Smucker shall *pay* to the

21

Trustee, on behalf of [Plaintiff's] bankruptcy estate, the amount of US$22,500.00 … *in exchange for* the [Plaintiff's] Estate's interest in the [instant lawsuit]." RJN, Ex. A at 13 (emphasis added). Thus, Smucker did not "settle" Plaintiff's claims with the bankruptcy estate in the manner she erroneously argues in her motion.[11]

Indeed, if Plaintiff were correct, the parties would have stipulated to the voluntary dismissal of her claims based on the settlement. Rather, as this court well knows, Defendant successfully moved to dismiss Plaintiff's claims based on her lack of standing resulting from the fact that Smucker *purchased* her entire right title and interest to the lawsuit from the bankruptcy trustee. Accordingly, there is no "net monetary recovery" that entitles Plaintiff to attorneys' fees pursuant to the CLRA. *Goodman v. Lozano*, 47 Cal. 4th 1327, 1333-34 (2010) (finding a party must actually "gain money" to have a "net monetary recovery").

Plaintiff is also not a "prevailing" party under a second approach, more appropriately applied here, in which the court examines whether a party succeeded on a practical level and analyzes which party actually realized its litigation objectives. *Graciano v. Robinson Ford Sales*, Inc., 144 Cal. App. 4th 140, 150-51 (2006) (citations omitted); *see also Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1264 (2012). For the reasons discussed at length above, Plaintiff has *never* achieved *any* success in the course of this litigation and all of her litigation objectives remain unrealized, as highlighted by counsel's decision to file an *identical* lawsuit based on the same preposterous assertions regarding the effects of trace levels of *trans* fat in the Smucker Products before this Court. Accordingly, Plaintiff is not entitled to attorneys' fees under the CLRA either.

## III.   PLAINTIFF'S $3.3 MILLION FEE REQUEST IS UNREASONABLE

---

[11] All of the cases Plaintiff cites that involve class action settlements are thus irrelevant on this issue. *See Sullivan v. Pa. Dep't of Labor, etc.*, 663 F.2d 443 (3d Cir. 1981); *Charlebois v. Angels Baseball LP*, 2012 U.S. Dist. LEXIS 91069 (C.D. Cal. May 30, 2012); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 1160 (C.D. Cal. 2010); *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140 (2006); *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331 (2006); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Although Smucker does not believe the Court should entertain any of the fees calculations present in Plaintiff's motion, it is compelled to respond to Plaintiff's outlandish demand.  As such, Plaintiff's $3.3 million fee request must be further rejected because Plaintiff's counsel's calculation of fees, and request for a multiplier, are entirely unreasonable.

### A.  Plaintiff's Fee Request Is Entirely Unreasonable

A party may only recover a *reasonable* amount of fees.[12] *Serrano v. Priest,* 20 Cal. 3d 25, 34 (1977) (emphasis added). Considering "the overall relief obtained . . . and whether the expenditure of counsel's time was reasonable in relation to the success achieved," Plaintiff's request for a $1.4 million lodestar is entirely unreasonable. *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 345 (2006). Moreover, Plaintiff may not recover for work on causes of action on which she was unsuccessful and, as discussed above, counsel's efforts in this case have failed to independently achieve any of the relief requested in Plaintiff's complaint. *Id.* at 342. Plaintiff simply cannot recover attorney fees for counsel's work on this case.

### B.  Plaintiff Is Not Entitled To A Lodestar Multiplier

Since the lodestar method yields a fee that is "presumptively sufficient," the application of a lodestar multiplier is only appropriate in "rare" and "exceptional" circumstances. *Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1673 (2010); *see also Cruz ex rel. Cruz v. Alhambra School Dist.*, 601 F. Supp. 2d 1183, 1196 (C.D. Cal. 2009).[13] Plaintiff's success in this case—to the extent the Court finds any—can hardly be said to qualify as so "rare" or "exceptional." As noted above, the $1,453,499 lodestar amount is already an absurd request. Enhancing this figure to $3,270,374 is

---

[12] Further, reasonable fees may not include unnecessary or duplicative efforts. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). As is readily seen by examination of Plaintiff's counsel's billing entries, they are rife with duplicative and unnecessary efforts, including, for example, work performed on a website and for a "defense counsel symposium." Sordina Decl. Ex. AA.

[13] Thus the award of a multiplier is not required under California law, and this Court has broad discretion to adjust an excessive fee downward or deny it altogether. *Anderson v. Long Beach City*, 81 Fed. Appx. 703, 707 (9th Cir. 2003) (quoting *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001)).

23

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   unjustified, unnecessary and unreasonable. Assuming Plaintiff deserves attorneys'

2   fees at all—a point that Smucker strongly disputes—Plaintiff's arguments fail to

3   overcome the "strong presumption" that a basic fee is reasonable.

4         First, "a trial court should award a multiplier for *exceptional representation*

5   only when the quality of representation *far exceeds* the quality of representation that

6   would have been provided by an attorney of comparable skill and experience."

7   *Ketchum*, 24 Cal. 4th at 1139 (emphasis added); *see also Cruz*, 601 F. Supp. 2d at

8   1196. Plaintiff presents no evidence that her attorneys' representation *far exceeds* the

9   quality of that available from other attorneys of comparable skill and experience. This

10  is especially true in light of the result in this case—Plaintiff failed to achieve *any*

11  decision in her favor, and instead had her claims dismissed for lack of standing. *See*

12  *Perez v. Safety-Kleen Sys., Inc.*, 448 Fed. Appx. 707, 709 (9th Cir. 2011) (cutting

13  plaintiff's proffered figure in half "in order to account for the over-inclusion of

14  recoverable claims, the limited success in view of the failure of [another] claim, and

15  the failure to establish [a key fact]"). Plaintiff's failure does not reflect a "superior"

16  quality of service, and Plaintiff has offered no evidence to the contrary. *Cruz*, 601 F.

17  Supp. 2d at 1196. The evidence and cost savings Plaintiff cites as a public "benefit"

18  are utter nonsense. Counsel cannot claim a lodestar multiplier based on a flawed

19  scientific opinion alleging inherently immeasurable benefits to human lives that are in

20  no way attributable to Smucker's products.

21        Moreover, the key issues in this false advertising case are neither novel nor

22  difficult for Plaintiff's counsel. This is one of at least ten cases filed by Plaintiff's

23  counsel alleging essentially the same violations, and is one of *three* cases filed by

24  Plaintiff's counsel against Smucker alone. As Plaintiff notes, counsel has "particular

25  familiarity with suits involving issues of mislabeling in the food industry" and has

26  "developed a niche expertise in litigation centered on trans fat." Fees Mot. at 25. [14]

27  ───────────────
    [14] Even if "novel arguments or strategies" were involved in this litigation—which they
28  were not—Plaintiff's counsel could have avoided them by conducting even a basic
    investigation of their named plaintiff. *Lopez v. San Francisco Unified Sch. Dist.*, 385
    F. Supp. 2d 981, 999 (N.D. Cal. 2005) (dismissing plaintiffs argument that they were

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

24

1    This routine false advertising case does not justify an increased fee award, and

2    certainly does not warrant a multiplier of 2.25.

3           While a multiplier may be considered where the litigation precluded the

4    attorney from accepting other employment, *Serrano*, 20 Cal. 3d at 49, over two and a

5    half years of litigation Plaintiff's two law firms can point to only *one* instance in

6    which they declined to take an additional case. Fitzgerald Decl. (Dkt. 230), Ex. 9. This

7    is insufficient to support counsel's assertion that "other employment" was precluded

8    this case. And while the contingent nature of a fee award may be considered, less

9    difficult and risky undertakings generally justify a lower enhancement, if one is given

10   at all. *Graham*, 34 Cal. 4th 583. This was a routine false advertising case in which a

11   class was never certified and the Plaintiff was dismissed for lack of standing. The risk

12   premium attached to counsel's contingent representation is not significant enough to

13   justify any multiplier. *Ketchum*, 24 Cal. 4th at 1138.

**CONCLUSION**

15          For all of the foregoing reasons, Smucker respectfully requests that the Court

16   deny Plaintiff's motion for attorneys' fees and costs.

18   Respectfully submitted,
19   Dated: January 28, 2013          Winston & Strawn LLP

20                            By:   /s/ Micol O. Sordina
21                                  Neal R. Marder
22                                  Ronald Y. Rothstein
                                    Micol O. Sordina
23                                  Attorneys for Defendant
                                    THE J.M. SMUCKER COMPANY

28   forced to overcome substantial obstacles presented by defendant where "plaintiffs []
     contributed to the difficulty of the litigation to some extent").

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543